FARMERS UNION GRAIN TERMINAL ASSOCIATION, a cooperative association, Plaintiff and Respondent,

v.

Walter BRIESE and Marvin Briese, Defendants and Appellants.

Civ. No. 8740.

Supreme Court of North Dakota.

Nov. 16, 1971.

Rehearing Denied Dec. 17, 1971.

DePuy, Fair & O'Connor, Grafton, for defendant and appellant Walter Briese.

Letnes & Marshall, Grand Forks, for defendant and appellant Marvin Briese.

Degnan, McElroy, Lamb & Camrud, Grand Forks, for plaintiff and respondent.

TEIGEN, Justice.

This is a suit in tort to recover for property damage to the plaintiff's International truck-tractor and trailer unit (hereinafter GTA semi) resulting from its collision with a farm tractor owned by the defendant, Walter Briese, and operated by an employee of the defendant, Marvin Briese. The case was tried to a jury which returned a verdict in favor of the plaintiff and against both defendants in the amount of $19,388, and dismissed the counterclaim of the defendant, Walter Briese, for damages to his farm tractor.

The defendants joined in one notice of appeal. According to the notice of appeal, both defendants appeal from the judgment and from an order denying a new trial. The defendant, Marvin Briese, also appeals from an order denying his motion for judgment notwithstanding the verdict.

Walter Briese did not move for judgment notwithstanding the verdict.

■ The written notice of entry of judgment was served on both defendants on December 23, 1969. The notice of appeal was served on August 11, 1970, more than ninety days after the notice of entry of judgment had been served. Thus the provisions of Section 28–27–04, N.D.C.C., which provide that an appeal from a judgment may be taken within ninety days after written notice thereof, limit the time for an appeal and have not been complied with. This statute is mandatory and jurisdictional. Where an appeal has not been taken within the statutory period, this court is without power to do more than dismiss the appeal. State v. Jacobson, 156 N.W.2d 70 (N.D.1968); C. & M., Inc. v. Northern Founders Insurance Co. of N. D., 124 N.W.2d 471 (N.D.1963). For this reason the appeal by both defendants from the judgment is dismissed.

The dismissal of the appeal from the judgment leaves for our determination the appeal of Marvin Briese from the order denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and the appeal of Walter Briese from the order denying his motion for a new trial.

■ We shall first consider the trial court's order denying Marvin Briese's motion for judgment notwithstanding the verdict. Upon appeal from such an order, our review is limited to the grounds which were assigned on the motion for a directed verdict. Linington v. McLean County, 161 N.W.2d 487 (N.D.1968); Kingdon v. Sybrant, 158 N.W.2d 863 (N.D.1968). On a review of an order denying a motion for judgment notwithstanding the verdict, we are limited to a consideration of the evidence. If the record is such that there is some issue of fact for the jury and the jury rendered a verdict thereon, then the motion for judgment notwithstanding the verdict should be denied. Pocta v. Kleppe Corporation, 154 N.W.2d 177 (N.D.1967);

Nelson v. Scherling, 71 N.D. 337, 300 N.W. 803 (1941).

■ In considering the evidence on a motion for judgment notwithstanding the verdict, the evidence must be considered in the light most favorable to the one in whose favor the jury returned a verdict. Pocta v. Kleppe Corporation, *supra*; Linington v. McLean County, *supra*.

■ The motion for judgment notwithstanding the verdict admits the truth of all inferences and conclusions which can reasonably be drawn from the evidence and which are favorable to the party opposing the motion. A motion should not be granted where there is an issue for the jury to pass on. Bartholomay v. St. Thomas Lumber Company, 148 N.W.2d 278 (N.D.1966); Linington v. McLean County, 146 N.W.2d 45 (N.D.1966); Larson v. Meyer, 135 N.W.2d 145 (N.D.1965). Furthermore, on an appeal from an order denying a motion for judgment notwithstanding the verdict, the only grounds which will be considered will be those which are assigned on the motion for a directed verdict. Hanson v. Fledderman, 111 N.W.2d 401 (N.D.1961); Leach v. Kelsch, 106 N.W.2d 358 (N.D.1960).

We have carefully examined the court's rulings with reference to the motion for a directed verdict, which were made at the close of the presentation of all the evidence in the case, and have concluded that the defendant, Marvin Briese, would not have been entitled to a directed verdict at the close of the trial. For this reason we find the trial court did not commit error in denying Marvin Briese's motion for judgment notwithstanding the verdict.

We will next consider the defendants' respective motions for a new trial.

The salient facts in this case are that the plaintiff, Farmers Union Grain Terminal Association (hereinafter GTA), commenced this action against the defendants Walter and Marvin Briese to recover damages suffered by GTA as a result of

the alleged negligence of the defendants, including a negligent bailment by the defendant, Walter Briese, of his farm tractor to the defendant, Marvin Briese, which farm tractor, while being operated upon a highway by an employee of Marvin Briese, collided with the large GTA semi being operated by GTA's employee, Lloyd Frankl. The collision occurred in the intersection of a township road and U. S. Highway 81 in Pembina County, North Dakota, at about 5:55 p. m., on November 2, 1967. The time of sunset at this point was established as occurring at 11.63 minutes after 5 p. m. on the date of the collision. Both vehicles were completely demolished and Marvin Briese's employee, Clifford Nelson, was killed. It appears that the farm tractor operated by Clifford Nelson was owned by Walter Briese but had been loaned to his brother, Marvin Briese, on November 1, 1967. Marvin Briese had employed Clifford Nelson to operate the farm tractor to do some field work and, on the evening of November 2, 1967, after completion of the day's work, Clifford Nelson was in the process of driving the farm tractor from the field to the home of Marvin Briese, located in Glasston, North Dakota. Clifford Nelson, operating the farm tractor, was proceeding in an easterly direction on the township road. It was an inferior highway and a stop sign was in place at the intersection with U. S. Highway 81. Lloyd Frankl was operating the GTA semi on U. S. Highway 81 in a southerly direction. U. S. Highway 81 was a through highway. Both vehicles approached the intersection at about the same time. Neither vehicle stopped. The collision occurred within the intersection and resulted in the damages for which GTA makes claim in this action. The defendant, Walter Briese, in addition to answering the complaint of GTA, has counterclaimed for the loss of his farm tractor. The case was tried to a jury. The jury returned a verdict in favor of GTA and dismissed the counterclaim of Walter Briese.

The defendant, Marvin Briese, has specified a number of grounds in his motion for a new trial. He has argued only three issues, however, on this appeal from the order denying his motion. We will limit our decision to the issues argued to this court. These grounds are: (1) the evidence is not sufficient to sustain the verdict; (2) the court erred in sustaining an objection to a question propounded to Professor Adolph Lee to express his expert opinion; and (3) the court erred in instructing the jury on the doctrine of sudden emergency. We will consider these specifications in the order set forth above.

■ In support of his argument that the evidence is not sufficient to sustain the verdict, the defendant, Marvin Briese, argues that GTA failed to prove that Clifford Nelson, the employee of the defendant, Marvin Briese, was negligent or, if negligent, that his negligence was a proximate cause of the damages sustained by GTA; and, secondly, that the record establishes that Lloyd Frankl, the operator of the GTA semi, was contributorily negligent and that such contributory negligence was a proximate cause of the collision. In order to determine the question on appeal from an order denying the motion, we must consider the evidence in the light most favorable to the verdict, which, in this case, is in favor of the plaintiff. Tennyson v. Bandle, 181 N.W.2d 687 (N.D.1970); Leake v. Hagert, 175 N.W.2d 675 (N.D. 1970); Lembke v. Unke, 171 N.W.2d 837 (N.D.1969).

Thus in considering such specification of insufficiency of the evidence, the court will assume the truth of the version of the evidence which tends to support the jury's verdict. Grenz v. Werre, 129 N.W.2d 681 (N.D.1964).

■ Viewing the evidence in this light, we find the record establishes that Lloyd Frankl, employee of GTA, was operating its 1967 semi, loaded with seed wheat, in a southerly direction on U. S. Highway 81

on November 2, 1967, at about 5:55 p. m., at a speed of 32 to 35 miles per hour, with the headlights on dim as it approached the intersection with the township road just south of the city of Glasston, North Dakota. When he was about forty feet from the intersection he saw the farm tractor being operated on the township road, which was a graveled road. The farm tractor was traveling in an easterly direction, without lights, as its front wheels entered upon the surface of the pavement which is a part of U. S. Highway 81. At that time the speed of the GTA semi was between 32 and 35 miles per hour and the speed of the farm tractor was between 8 and 10 miles per hour; that the farm tractor failed to stop at the stop sign before entering U. S. Highway 81; that the farm tractor was being driven in the middle of said township road; that both vehicles continued to move forward without reduced speed but that Lloyd Frankl, operating the GTA semi, had taken his foot from the accelerator but had no time in which to brake his vehicle and it struck the farm tractor broadside within the intersection. The impact caused the cab of the GTA semi to be torn loose from its moorings and propelled through the air. The total over-all loaded weight of the GTA semi was 73,000 pounds; the truck-tractor of the GTA semi was a 1967 model with about 10,000 miles on it and was in good mechanical condition. At the time of the collision the light conditions were between dusk and dark, the sun having set about 40 or 45 minutes earlier. Lloyd Frankl saw the farm tractor approaching from a distance of about forty feet but did not have sufficient time to apply his brakes. The posted speed limit on U. S. Highway 81 at the point where the collision occurred was 40 miles per hour. These facts will sustain a finding, on the part of the jury, that the operator of the farm tractor was negligent in that he failed to stop at the stop sign and to give right of way to the GTA semi and, further, that he was negligent in operating the farm tractor without lights on a public highway at night, which is contrary to the statute requiring all vehicles being operated on our highways one half hour after sunset to have lights burning.

The defendant, Marvin Briese, argues that the evidence establishes as a matter of law that the collision did not occur in the west half of the intersection, but that shortly before the collision Lloyd Frankl, the operator of the GTA semi, swerved sharply to the left and that the GTA semi struck the farm tractor in the east half of the intersection; that if the GTA semi had proceeded in its own lane of travel, being the west (southbound) lane of U. S. Highway 81, there would have been no collision. This claim is based on evidence introduced by the defendant, Marvin Briese, that the debris caused by the collision was all located in the east half of the intersection and, further, by certain claimed admissions of Lloyd Frankl made immediately following the collision. The appellant, Marvin Briese, argues that the action on the part of Lloyd Frankl in driving to the left constituted contributory negligence which proximately caused the collision, thus barring recovery. However, as a result of the introduction of evidence in an attempt to prove that Lloyd Frankl swerved his vehicle, the trial court instructed the jury on the doctrine of sudden emergency based upon the negligence of another person. Thus, whether the jury believed the testmony of Lloyd Frankl that he did not swerve the GTA semi, or whether it accepted the evidence of the defense that Lloyd Frankl did swerve the GTA semi to the left after being confronted by the sudden emergency created by the negligence of the operator of the farm tractor, the evidence, in either event, is, in our opinion, sufficient to sustain the verdict. Under the evidence and the instructions the jury could have concluded that Lloyd Frankl swerved but that, because of the emergency created by the negligence of the operator of the farm tractor, he was not held to the same degree of care and prudence as is ordinarily demanded of a person who has time for deliberation in the full exercise of judgment and, therefore, he was not guilty of contributory negligence, as the act of

swerving, under the circumstances, would be the act of an ordinarily prudent person under like circumstances.

Next, the appellant, Marvin Briese, specifies that the trial court erred in sustaining an objection to the following question propounded to Adolph O. Lee, a qualified expert in the fields of mechanical engineering, force, inertia, strength of materials and accident analysis:

"Q. All right. Mr. Lee, based upon that statement and based upon the photographs handed to you this morning, examination of all of those exhibits, your personal observation of the gouge marks, your measurements, and assuming that gouges and spread of oil, and their continuity up to either the farm tractor and semi truck, came to rest on east ditch south of the intersection, were caused by the momentum of the equipment, and its movement from upon highway 81 to place where it came to rest, do you have an opinion as to whether this is consistent with position of the farm tractor and semi truck coming together as shown in the south bound lane on highway number 81 and as shown on exhibit 'H'."

The trial court sustained an objection to the question on the ground that the question calls for the witness, Lee, to pass upon the credibility of Lloyd Frankl's testimony. This matter, the trial court advised the attorneys, is for the jury.

Exhibit "H", referred to in the question, is a large scale drawing of the intersection. It was introduced in evidence by the defendant, Marvin Briese. On cross-examination of Lloyd Frankl, scale cutouts of the GTA semi and Walter Briese's farm tractor were, at the direction of defense counsel, placed upon Exhibit "H" by Lloyd Frankl. After placing these cutouts upon Exhibit "H", he was asked to outline them with a red pencil. In this manner he showed the position of the GTA semi at the point where,

he testified, he first saw the farm tractor entering upon U. S. Highway 81. The farm tractor was outlined as straddling the center of the township road, with its front wheels up on the blacktop of U. S. Highway 81, and facing in an easterly direction. He was then asked to place the cutouts of the GTA semi and the farm tractor in the positions that these vehicles were in when the impact occurred. Having placed the cutouts in position, he was asked to outline them on Exhibit "H" in red pencil. This graphically showed that the impact, according to the testimony of Lloyd Frankl, occurred in the west, or southbound, lane of U. S. Highway 81 with the immediate point of impact in the northwest quadrant of the intersection.

Several defense witnesses preceded Adolph O. Lee on the witness stand and testified that, following the collision, they found debris and gouge or scrape marks upon the highway in the east half of U. S. Highway 81, within the intersection, and that these marks led to an area in the ditch on the east side of U. S. Highway 81 and south of County Highway 3 (the township road upon which the farm tractor was traveling becomes County Highway 3 on the east side of U. S. Highway 81) where the wrecked vehicles came to a stop after the collision. Prior to the time that the question set forth above was propounded to him, Adolph O. Lee testified that he had also examined the accident scene the day following the accident and that he had also examined the vehicles; that he had listened to the testimony of several witnesses during the trial, including the deposition of the state highway patrolman which was read into the record. The patrolman deposed that he had talked with GTA's driver, Lloyd Frankl, in the hospital shortly after the accident and that Mr. Frankl had told him that when he observed the farm tractor coming onto U. S. Highway 81 from the west that he, Frankl, had swung his semi to the left. This is the statement referred to in the question propounded to Mr. Lee.

On the basis of the evidence produced it is clear that the theory of the defense

was that the collision did not occur within the west half of the intersection, as testified by Lloyd Frankl, but that the collision occurred within the east half of the intersection and, although no offer of proof was made to advise the court of the answer that would be given by Mr. Lee to the question propounded to him, it is obvious that the attorney for the defendant expected the answer to be in the negative. In other words, it would be the opinion of the expert, Lee, that the impact area in relation to the intersection was not consistent with the impact area as shown by the facts testified to by Lloyd Frankl, orally or by the placement of the cutout vehicles on the intersectional diagram marked Exhibit "H". Thus the purpose of the question propounded was clearly to have the witness, Adolph O. Lee, pass upon the credibility of Frankl's testimony. This is admitted by the attorney for the defendant, Marvin Briese, in his brief. He states:

"Mr. Lee was not asked if he had an opinion as to how or in what manner the collision occurred. The question as to his opinion was addressed to his ability to determine any inconsistency between Frankl's testimony on the one hand, as opposed to all of the physical facts, photographs, location of debris, oil, etc., on the highway."

He argues that:

"Mr. Lee, by reason of his qualifications, was very competent to give voice to his opinion regarding the consistency of the evidence."

We feel that the question was tailored to test the credibility of the witness, Frankl, by an expert's opinion. This, we find, invades the province of the jury. This court held in Hunder v. Rindlaub, 61 N.D. 389, 237 N.W. 915 (as stated in the syllabus therein), as follows:

"Questions calling for expert opinions should be framed so as not to call upon the witness to determine controverted questions of fact, to pass upon the cred-ibility of witnesses, or the preponderance of evidence."

In 31 Am.Jur.2d, Expert and Opinion Evidence, Section 41, it is stated:

"All courts agree that if there is any conflict between the witnesses as to the material facts on which an expert opinion is sought, or such facts are doubtful and remain to be found by the jury, the expert witness cannot, although he has heard the testimony, be asked to base his opinion on that testimony, because, to reach His conclusion, he would necessarily have to invade the province of the jury and pass on the credibility of witnesses and the weight of the evidence."

For these reasons we hold that the court did not err in overruling the objection to the question.

Lastly, Marvin Briese claims that the trial court erred when it instructed the jury on the doctrine of sudden emergency. He premises his claim of error on the argument that the plaintiff did not plead or prove that his driver was faced with a sudden emergency, nor that his driver took any steps to avoid a danger. On the contrary, he claims that the plaintiff's driver testified that as far as he could recall he proceeded on his proper side of the highway and that the collision occurred in the west half of the intersection.

The issue on this question arose from the answer of the defendant, Marvin Briese, in which he affirmatively pleaded contributory negligence as a defense. The allegation was general, but in support of the allegation the defendant, Marvin Briese, produced evidence of physical facts found at the accident scene from which the jury could find that the plaintiff's driver had driven the plaintiff's GTA semi to the left side of the centerline of U. S. Highway 81, and that the collision occurred in the east half of the intersection instead of in the west half thereof as indicated from the testimony of the plaintiff's driver. Thus there was a conflict in the evidence

relative to the place where the collision occurred. It is the contention of the defendant, Marvin Briese, that the evidence conclusively establishes that the collision occurred in the east half of the intersection and that the plaintiff's driver was negligent in driving the plaintiff's GTA semi on the wrong side of U. S. Highway 81; that this was negligence which was a proximate cause of the collision and, therefore, constitutes contributory negligence and bars recovery by the plaintiff.

The plaintiff argues that the evidence introduced at the trial will support a finding by the jury that its driver was driving the GTA semi, weighing 73,000 pounds, southerly on U. S. Highway 81 (a through highway) during the hours of darkness, in a lawful manner, and as he approached the intersection of U. S. Highway 81 with the township road (an inferior highway) he suddenly and unexpectedly was confronted with the farm tractor; that the farm tractor, without stopping and without lights, was proceeding to cross U. S. Highway 81, on which the plaintiff's driver was driving, from the inferior intersecting highway, and that the plaintiff's driver had no more than a few seconds' time in which to act; that sensing he could not brake in time, the plaintiff's driver took his foot off the accelerator and swerved the GTA semi from the southbound lane into the east, or northbound lane, in an effort to get out of the way and extricate himself from the peril, but he struck the farm tractor at a point somewhere in the east half of the intersection, being the northbound lane of U. S. Highway 81.

On this theory the plaintiff sought to invoke the emergency doctrine. The attorney for the plaintiff submitted two requested jury instructions on the doctrine. The trial court rejected both requests, stating, however, that an instruction would be given covering the requests in substance, and it used the suggested form of instruction as contained in the North Dakota Jury Instructions. There is no objection as to the form or content of the instruction.

The contention is that it was error to give any instruction on the doctrine of sudden emergency for the reasons stated above.

 The first question is: must the doctrine be pleaded to be invoked? We recognize that it is common practice where a defendant wishes to invoke the emergency doctrine to plead it as a defense in his answer. However, this practice does not establish that in order to invoke the doctrine it must be pleaded. We have here a situation where the issue on the question of whether the emergency doctrine should be included as a part of the instructions to the jury arises as a result of an averment by the defendant, Marvin Briese, in his answer to the plaintiff's complaint, and the evidence adduced at the trial. He has pleaded, in general terms, the affirmative defense of contributory negligence. Our rules of civil practice do not contemplate a responsive pleading to an answer. Our rules provide, however, that the affirmative defense of contributory negligence must be pleaded. Rule 8(c), N.D.R.Civ.P. A reply or other responsive pleading to an answer is not allowed under our rules unless ordered by the court. Rule 7(a), N.D.R.Civ.P. However, Rule 8(d), N.D.R.Civ.P., provides that averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided. In this case there was no responsive pleading to the answer of the defendant, Marvin Briese, averring the affirmative defense of contributory negligence. Therefore, the averment of the answer that the plaintiff's driver was contributorily negligent must be taken as denied or avoided without a responsive pleading. Where the evidence adduced to support the averment, taken together with all the other evidence adduced, fairly raises an issue under the sudden emergency rule, we hold it is proper to instruct the jury on the rule, although it was not pleaded.

 There is a further reason why the doctrine of sudden emergency need not

be pleaded to be invoked. The emergency doctrine is not a defense. Rohde v. St. Louis Public Service Co., 249 S.W.2d 417 (Mo.1952); Robb v. Wallace, 371 S.W.2d 232 (Mo.1963); 61 C.J.S. Motor Vehicles § 460. A person invoking the emergency doctrine is not exonerated merely because of an emergency. The doctrine is simply a principle of law to be utilized in determining the issue of negligence where the actor is suddenly confronted with an emergency not of his own making or fault. Under such circumstances he is required only to exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances. Accordingly, conduct, which under other circumstances would constitute negligence, may not amount to negligence even though he erred in his judgment in trying to extricate himself from a position of peril. In such case, the person who was confronted with the emergency is not, as a matter of law, to be denied recovery of damages on the ground of contributory negligence because he failed to take every precaution which he might have taken or because, in the light of subsequent events, he is shown to have chosen the wrong method of avoiding injury. He is not contributorily negligent if he acted as an ordinarily prudent person would act under like circumstances. Bauer v. Kruger, 114 N.W.2d 553 (N.D.1962); Gravseth v. Farmers Union Oil Company of Minot, 108 N.W.2d 785 (N.D.1961); Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761 (1952). In short, the emergency doctrine is a rule of law properly invoked under proper circumstances to measure ordinary care. We find that the issues framed by the pleadings and the evidence adduced at the trial in this case raise the question and it was proper to give the instruction.

The farm tractor involved in the collision was owned by the defendant, Walter Briese. On November 1, 1967, he loaned it to his brother (the defendant, Marvin Briese) to do some field work on his land. Prior to the time that Marvin borrowed the tractor, it had been operated by Clifford Nelson. He was in Walter's employ during the morning of November 1 and, when the work was completed, Clifford Nelson took the tractor to Marvin's land where he continued to operate it, but in the service of Marvin. It is undisputed that from the time the tractor was borrowed by Marvin it was entirely in his control as Walter had no interest in the work being done with it nor was Walter to be compensated in any manner or amount for its use by Marvin, and Mr. Nelson became the employee of Marvin. At the end of the day the farm tractor was driven to the yard of Marvin Briese's home for the night. His home is located in Glasston. The following morning the tractor was driven back to the field to be used in cultivating Marvin's land. During the noon hour Marvin transported Clifford Nelson, the tractor operator, to his house in Glasston for lunch and returned him to the field after lunch. After the day's work in the field, Clifford Nelson was returning the farm tractor to Marvin Briese's yard in Glasston when the collision occurred. His route from the field to Marvin Briese's yard led to the township road, thence easterly to U. S. Highway 81, and thence north into Glasston. Clifford Nelson lost his life in the collision which occurred at the intersection of Highways 3 and 81, and the farm tractor was completely demolished. The plaintiff GTA joined the two brothers as defendants. Walter Briese, owner of the farm tractor, counterclaimed for its loss. The jury returned a verdict against both defendants and dismissed Walter's counterclaim.

Through his attorney Walter Briese moved for a directed verdict at the close of the plaintiff's case and again at the close of all the evidence. He also joined in the motion for a directed verdict or dismissal by Marvin Briese, through his attorney. The motions were denied. After judgment, Walter Briese moved for a new trial on the grounds of the insufficiency of the evidence to sustain the verdict against him and that the verdict against him was

against the law. The trial court denied the motion and Walter has appealed from the order denying his motion.

It was stipulated that a bailment existed between Walter and Marvin Briese. When Marvin Briese requested the use of Walter Briese's farm tractor, it was being used on land operated by Walter Briese which was located about five miles north of Glasston. On the morning of November 1, 1967, Mr. Nelson, who was operating the farm tractor, finished the work on Walter Briese's land and was then instructed, by Walter, to fill the tractor with fuel and take it to Marvin Briese's home in Glasston. This necessitated driving the tractor on U. S. Highway 81. Walter Briese testified that the farm tractor, during the week prior to this accident, was used on his land after dark. He testified that the operator's eyes would adapt to the darkness so that he could operate the farm tractor, without lights, until seven or eight o'clock at night. The land operated by Marvin Briese, upon which the farm tractor was used, was located about two and one-half miles west of Glasston. Marvin Briese's home was located in Glasston, his house facing on U. S. Highway 81 about three blocks north of the intersection where the collision occurred. Marvin Briese testified that some of his farm equipment was kept at his home and some was kept on his father's farm several miles out of town, but that his service facilities, including fuel and lubricating oil for his farm machinery, were located at his home in Glasston. He testified that the only practical way to drive the farm tractor from his home to his farmland west of Glasston was to drive on U. S. Highway 81 about three blocks south to the intersection where the collision occurred, and then to drive west about two and one-half miles on the township road to his land. It is not indicated that any servicing or fueling facilities for the farm tractor were located on the land site which was being worked with the farm tractor.

Walter Briese affirmatively testified that the lights on his farm tractor were not working and that he gave his brother, Marvin, specific instructions not to use the tractor on the highway at night. Marvin confirmed this admonition. He testified as follows:

"A. He stopped at my house and we— and he did not even come in the house— we talked in doorway and told me there was no lights on the tractor and not to run it at night.

"Q. You understood that instruction, at the time you received it?

"A. Yes."

On cross-examination he was asked:

"Q. Mr. Briese, you say you were told that there were no lights on it, that correct?

"A. Yes."

According to the uncontradicted testimony he was also told by Walter Briese that the condition could be repaired by replacing a fuse but he did not do so.

The statute governing the operation of farm tractors provides:

"Every farm tractor * * * when operated upon the highways of this state during the times * * * [from a half-hour after sunset to a half-hour before sunrise, Section 39–21–01, N.D.C.C.] shall be equipped * * * [with lamps as described therein, which, at the times specified in Section 39–21–01, N.D.C.C., shall be lighted]." Section 39–21–15, N.D.C.C.

Section 39–21–46(1), N.D.C.C., provides the scope and effect of the provisions of the chapter, and the penalty. It states:

"1. It is a misdemeanor for any person to drive or move or *for the owner to*

*cause or knowingly permit to be driven or moved on any highway any vehicle* or combination of vehicles *which* is in such unsafe condition as to endanger any person, or which does not contain those parts or *is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this chapter,* or which is equipped in any manner in violation of this chapter, or for any person to do any act forbidden or fail to perform any act required under this chapter." [Emphasis added.]

Walter Briese argues that he did not *knowingly* permit Marvin to operate (through his employee) his farm tractor on the highway after dark, but had specifically prohibited it.

The above statute makes it a misdemeanor for an owner to cause or to knowingly permit to be driven or moved on any highway any vehicle which is not at all times equipped with such lamps, in proper condition and adjustment, as are required by statute. Walter Briese admits that the farm tractor was not equipped with lamps in proper condition and adjustment, as required by the statute, so as to allow it to be operated on a highway at night.

The trial court instructed the jury on the principles of law that a bailor, knowing of dangerous defects in his vehicle, may not permit another to operate such defective vehicle on the highways of this state, and that failure to perform or discharge this duty is negligence and the bailor is liable for such injuries and damages as are proximately caused by the defective condition of the vehicle; that, in order to hold him liable, it is not necessary that the bailor should have foreseen the exact manner in which the injury might occur, or that negligent acts on the part of the person entrusted with the bailed vehicle might also act as a concurring cause. In addition, it instructed on the statutory requirement pertaining to lights on a vehicle to permit it

to be operated upon the highways of this state, and the requirement that vehicles, such as farm tractors, when operated at any time from a half-hour after sunset to a half-hour before sunrise, and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons or objects are not clearly discernible at a distance of 500 feet, shall have their lamps lighted. The jury was also instructed that it, and it alone, had the right to determine the credibility of the witnesses and the weight to be given to their testimony. Under the circumstances in this case the jury may not have believed the testimony that Walter Briese specifically instructed his brother, Marvin Briese, not to permit the farm tractor to be operated on the highways after dark and, on the basis of his own practice of operating the farm tractor until seven or eight o'clock at night, long after it became dark, and his knowledge that it would be operated upon the highways in driving it from his brother's fields to his brother's yard, located in the city of Glasston, for servicing and refueling, that his failure to perform his duty by loaning the farm tractor to his brother, which farm tractor he knew to be in a defective condition insofar as lights were concerned, constituted negligence which was a proximate cause of the collision. Larson v. Meyer, *supra.*

The trial court submitted special verdicts to the jury. It answered the following special verdict in the affirmative, finding the fact that there were no lights on the farm tractor which were operable was a defective condition which constituted a proximate cause of the collision.

"QUESTION NO. 1. Do you find from the evidence that at the time and place of the accident referred to in the testimony in this case that defendant Walter Briese negligently permitted use of his farm tractor by another and that the defective condition of the farm tractor was a proximate cause of the collision

182

resulting in damages to plaintiff's truck-tractor and trailer unit?

"Answer 'yes' or 'no'. ANSWER Yes.

"If 'yes,' what was the defective condition?

ANSWER———

"There were no lights on the farm tractor which were operable."

The collision occurred at about 5:55 p. m. on November 2, 1967. Sunset on that day was established as occurring at 11.63 minutes after 5 p. m. Therefore, when the collision occurred, more than one-half hour after sunset, the lamps on the tractor should have been lighted.

In viewing the evidence in the light most favorable to the verdict, as we must in reviewing an order denying a motion for a new trial specifying the insufficiency of the evidence to sustain the verdict, or that it is against the law (Ternes v. Farmers Union Central Exchange, 144 N.W.2d 386 (N.D.1966)), we hold that the evidence is sufficient to justify the verdict of the jury against Walter Briese.

For the reasons set forth herein, the judgment, the order denying judgment notwithstanding the verdict, and the orders denying the motions for new trial are affirmed.

STRUTZ, C. J., and TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.