John EBACH and Joyce Ebach, Plaintiffs and Appellants,

v.

Robert R. RALSTON, Defendant and Appellee,

and

The City of Minot, a Municipal Corporation, Defendant.

Civ. No. 930157.

Supreme Court of North Dakota.

Jan. 5, 1994.

Timothy J. Austin (argued), of Kelsch, Kelsch, Ruff & Austin, Mandan, for plaintiffs and appellants.

Robert J. Hovland (argued), of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendant and appellee.

MESCHKE, Justice.

John and Joyce Ebach appeal from an order denying their motions for judgment notwithstanding the verdict and for a new trial in their personal injury action against Robert Ralston. We affirm.

The Ebachs sued Ralston and the City of Minot, alleging that John was seriously injured on December 27, 1984, when, after stopping his car for a red light at the intersection of the highway 2–52 bypass and 16th Street Southwest in Minot, he proceeded north on 16th Street through a green light and was hit by a semi-truck that Ralston was driving east through a red light on the bypass. The Ebachs alleged that Ralston negligently operated his truck and that the City's choice of traffic signals at this crossing resulted in a dangerous intersection.

Ralston denied that he was negligent and alleged that, as he approached the red light at the intersection, he unexpectedly hit a slippery spot and was unable to stop his truck. Ralston further alleged that the Ebachs' injuries were the result of the negligence of John and of other parties. The City also denied liability, claiming that the State

had sole and exclusive control over the choice of traffic·signals at the intersection.

In *Ebach v. Ralston,* 469 N.W.2d 801 (N.D. 1991), we held that, under our statutes dealing with control of state highways within city boundaries, the State had sole control over the choice of traffic signals at this intersection. We thus held that the City owed no duty to the Ebachs and affirmed summary judgment dismissal of their action against the City. A jury subsequently found that Ralston was not negligent, and judgment was entered dismissing the Ebachs' action against him. The trial court thereafter denied the Ebachs' motions for a new trial and for judgment notwithstanding the verdict, and they appealed.

### 1.  Intersection Evidence

### A.  Traffic controls

The Ebachs concede that Ralston "had a limited right to show whether this intersection was dangerous." *See DeLair v. County of LaMoure,* 326 N.W.2d 55 (N.D.1982); *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819 (N.D.1980). However, they assert that because the City owed no duty to them and therefore could not be a tortfeasor, the trial court erred in admitting Ralston's evidence about the City's "fault" in the choice of traffic signals at this intersection. They contend that Ralston's evidence blamed the City for the choice of traffic signals at this dangerous intersection and argue that its probative value was substantially outweighed by confusion and prejudice. Ralston responds that the evidence did not specify whether the State or the City was at fault for the choice of signals at this intersection and that, under NDREv 403, the trial court did not abuse its discretion in admitting that evidence.

■■■ In *Williston Farm Equipment v. Steiger Tractor,* 504 N.W.2d. 545, 548–49 (N.D.1993), we recently outlined our review of a trial court's determination of relevancy and the admissibility of evidence under NDREv 403:

> Relevant evidence means evidence that would reasonably and actually tend to prove or disprove any fact that is of conse-

quence to the determination of an action.... Relevant evidence is generally admissible.... A trial court has discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent an abuse of discretion.... Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ... A trial court has discretion to balance the probative value of the proffered evidence against the dangers enumerated in Rule 403, N.D.R.Ev., and we also review that determination under the abuse-of-discretion standard.

(Citations omitted.) These standards apply here.

■■ Under the comparative negligence law in effect at the time of this accident, NDCC 9–10–07, we have approved the apportionment of fault among named defendants and unnamed settling or statutorily immune parties. *Hoerr v. Northfield Foundry and Machine Co.,* 376 N.W.2d 323 (N.D. 1985) [apportionment of fault among non-settling tortfeasor, statutorily immune employer, and settling tortfeasors]; *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d 334 (N.D.1983) [apportionment of fault between non-settling tortfeasor and statutorily immune employer]; *Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1979) [apportionment of fault among settling and non-settling tortfeasors]. Under similar comparative negligence statutes in Minnesota and Wisconsin [*Bartels* ], the fault of settling or immune parties is submitted to the jury. *Lines v. Ryan,* 272 N.W.2d 896 (Minn.1978); *Connar v. West Shore Equipment of Milwaukee, Inc.,* 68 Wis.2d 42, 227 N.W.2d 660 (1975). Evidence of the responsibility or fault of an unnamed or immune tortfeasor is often relevant to the allocation of fault among named tortfeasors.

■■ A majority of this court has held that the State is immune from liability under the doctrine of sovereign immunity. *Leadbetter v. Rose,* 467 N.W.2d 431 (N.D.1991). Here,

the challenged evidence depicts the relationship between the State and the City and their roles in the choice of traffic signals at this intersection. That evidence generally indicates that the City resisted the State's recommendation for an arguably safer method of controlling traffic at this intersection. The relationship between the State and the City regarding the choice of signals was interrelated. Despite that interrelationship, the State ultimately controlled the choice of traffic signals, and the City owed no legal duty to the Ebachs. *Ebach v. Ralston.* However, the Ebachs did not request an instruction explaining that issue to the jury. *See* NDREv 105. An instruction on that issue might have alleviated the Ebachs' claim of confusion and prejudice. The trial court determined that the evidence was relevant to accurately allocate fault for this accident, and we cannot say that it abused its discretion in admitting that evidence.

### B. Other accidents

The Ebachs contend that the trial court erred in admitting statistical evidence of the number of other right angle accidents at this intersection between 1981 and 1987. The Ebachs argue that there was an inadequate foundation to show that those prior and subsequent right angle accidents were substantially similar to this right angle accident.

■ In *South v. National R.R. Passenger Corp.*, we said that evidence of prior substantially similar near accidents at the same site was admissible to show, among other things, that a dangerous condition existed, and we held that the trial court did not abuse its discretion in admitting evidence of substantially similar prior near accidents at a railroad crossing. *See generally* Annot., *Modern Status of Rules as to Admissibility of Evidence of Prior Accidents or Injuries at Same Place*, 21 A.L.R.4th 472 (1983). Evidence of substantially similar *subsequent* accidents at the same site also may be probative of the condition of the premises at the time of an accident. *Burlington Northern Railroad Co. v. Whitt*, 575 So.2d 1011 (Ala. 1990); *Wood v. Walt Disney World Co.*, 396 So.2d 769 (Fla.Dist.Ct.App.1981); *Dudley v. County of Saratoga*, 145 A.D.2d 689, 535

N.Y.S.2d 231 (N.Y.App.Div.1988); *Wright v. Commonwealth of Pennsylvania*, 142 Pa. Cmwlth 91, 596 A.2d 1241 (1991). *See* 29 Am.Jur.2d *Evidence* § 309 (1967). Substantially similar prior and subsequent accidents at the same site may be relevant to establish the dangerousness of the premises at the time of an accident.

■ The trial court refused to allow Ralston to introduce evidence of the number of all accidents at this intersection between 1981 and 1987, and, for purposes of comparative negligence and knowledge of the dangerousness of this intersection, limited admissibility to the number of right angle accidents at this intersection for those years. The court recognized that it was a difficult question, but determined that right angle accidents were "close enough" to this right angle accident. In balancing the probative value of the proffered evidence against the dangers of prejudice and confusion, trial courts are in a better position to determine whether that evidence is substantially similar. *Williston Farm Equipment v. Steiger Tractor.* We cannot say that the trial court abused its discretion in admitting evidence of the number of right angle accidents at this intersection between 1981 and 1987.

### 2. Jury Instructions

■ The Ebachs assert that the trial court erred in instructing the jury. Jury instructions must fairly and adequately inform the jury of the applicable law. *Maurer v. Wagner*, 509 N.W.2d 258 (N.D.1993). On appeal, we review jury instructions as a whole to determine if they fairly and adequately advise the jury of the law. *Id.*

### A. Sudden Emergency

The Ebachs contend that the trial court erred in instructing the jury on the sudden emergency doctrine:

> If a person is suddenly and unexpectedly confronted with an emergency or situation of peril that involves impending danger, or the appearance thereof, to himself or herself or to others and is not created by his or her own fault, he or she is not expected, nor required, to use the same judgment

and prudence that is required of him or her in calmer and more deliberate moments. His or her duty is to exercise only the care that a person of ordinary prudence would exercise in the same situation. If, at that moment, he or she does what appears to him or her to be the best thing to do, and his or her choice and manner of action are the same as might have been followed by a person of ordinary prudence under the same conditions, he or she does all the law requires of him or her, although, in the light of after-events, it appears that a different course would have been better and safer.

The Ebachs argue that this instruction erroneously suggests that parties encountering a sudden emergency owe a lesser duty of care than that of a reasonable person, and that the adoption of comparative negligence has replaced the sudden emergency doctrine.

In *Haider v. Finken,* 239 N.W.2d 508, 514 (N.D.1976), we outlined the contours of the sudden emergency doctrine from *Tennyson v. Bandle,* 181 N.W.2d 687 (N.D.1970):

"2. The doctrine of 'sudden emergency' is based upon the principle that a person suddenly confronted by a dangerous situation, whether it was created by the negligence of another person or by a condition not the result of his own negligence, is not held to the same accuracy of judgment as would be required of him if he had time for deliberation.

"3. Where a person who suddenly is confronted by a dangerous situation *not caused by his own negligence* exercises such care as an ordinarily prudent person would exercise in a like emergency, he is not liable for a resulting injury."

(Emphasis in original.) A person encountering a sudden emergency is not exonerated because of the emergency; rather, that person must exercise the degree of care that a reasonable person would exercise under the circumstances of an emergency. *Farmers Union Grain Terminal Ass'n v. Briese,* 192 N.W.2d 170 (N.D.1971). The emergency must not arise as a result of that person's own negligence. *Gronneberg v. Hoffart,* 466 N.W.2d 809 (N.D.1991). In short, the sudden emergency doctrine is a rule of law requiring a person to exercise ordinary care under emergency circumstances that are not caused by that person's own negligence.

The standard of care required by the sudden emergency doctrine—that is, ordinary care under the circumstances of an emergency—is well settled for negligence actions. For examples, *see Gronneberg; Haider;* Prosser and Keeton on Torts, § 33 (5th Ed. 1984); Restatement (2d) of Torts § 296 (1965). However, the continued use of a separate sudden emergency instruction in negligence actions has been criticized in recent years, because the typical sudden emergency instruction may suggest a lower standard of care for a sudden emergency, thus confusing responsibility for accidents under comparative negligence principles, and because it adds little to ordinary negligence instructions. Annot., *Modern Status of Sudden Emergency Doctrine,* 10 A.L.R.5th 680 (1993); 57A Am.Jur.2d *Negligence* § 216 (1989); Prosser and Keeton on Torts at § 33. In reaction to these criticisms, changes in practice have taken place.

Some courts have explicitly held that a separate sudden emergency instruction should never be given in negligence actions. *Bass v. Williams,* 839 S.W.2d 559 (Ky.Ct. App.1992); *McClymont v. Morgan,* 238 Neb. 390, 470 N.W.2d 768 (1991); *Simonson v. White,* 220 Mont. 14, 713 P.2d 983 (1986); *Knapp v. Stanford,* 392 So.2d 196 (Miss. 1980). Other courts have discouraged the use of a separate sudden emergency instruction in negligence actions. *Weiss v. Bal,* 501 N.W.2d 478 (Ia.1993); *Templeton v. Smith,* 88 Or.App. 266, 744 P.2d 1325 (1987), *rev. denied,* 305 Or. 45, 749 P.2d 1182 (1988); *DiCenzo v. Izawa,* 68 Haw. 528, 723 P.2d 171 (1986); *Gagnon v. Crane,* 126 N.H. 781, 498 A.2d 718 (1985); *Bayer v. Shupe Bros. Co.,* 223 Kan. 668, 576 P.2d 1078 (1978). The model jury instructions in Illinois, Florida, Kansas, and Missouri recommend that a separate instruction on sudden emergency should not be given in negligence actions. Prosser and Keeton on Torts at § 33. However, other courts have explicitly preserved the continued use of a separate sudden emergency instruction despite arguments that the emergency doctrine suggests a lower stan-

dard of care than ordinary negligence and has been abolished by comparative negligence. *Young v. Clark,* 814 P.2d 364 (Colo. 1991); *Compton v. Pletch,* 561 N.E.2d 803 (Ind.App.1990) aff'd., 580 N.E.2d 664 (1991). Amid this divergence, we must reconsider our own course.

The rationale for the standard of ordinary care under the circumstances of an emergency is well established for negligence actions. Yet, we share some of the concerns of courts that have criticized the use of a separate sudden emergency instruction in negligence actions. *See Knapp* [sudden emergency instruction elevates its principles above what is required to be proven in negligence action]; *Simonson* [sudden emergency instruction adds nothing to established standard of care for negligence and may leave impression that emergency excuses lack of due care]; *McClymont* [separate sudden emergency instruction singles out one aspect of general standard of care, thereby unduly emphasizing one party's argument]. Those criticisms are underscored in automobile accident cases when there is reason to believe a sudden emergency may have been created by a driver's negligent failure to anticipate common driving experiences. As Prosser and Keeton on Torts at § 33 suggest, under present day traffic conditions, an automobile driver must be prepared for the sudden appearance of obstacles and persons on highways and at intersections.

■■■■ However, we believe carefully drafted instructions about a driver's standard of ordinary care under the circumstances of an emergency, coupled with instructions about the driver's standard of ordinary care before the emergency arose, give adequate guidance to the jury and latitude to the parties to argue that a sudden emergency may have been caused by the driver's lack of prior care and should have been anticipated. Carefully drafted instructions about those situations direct a jury to assess fault for deviations from the negligence standard of ordinary care under emergency circumstances and are consistent with the assessment of fault under comparative negligence. *See Young v. Clark; Compton v. Pletch.* Although an instruction that unduly emphasizes

the sudden emergency doctrine is not acceptable, we nevertheless decline to reverse this verdict solely on the basis of the instructions given.

The first sentence of this sudden emergency instruction directs that a person confronting a sudden emergency is not expected to use the same judgment and prudence as required in calmer and deliberate moments. Still, the instruction immediately explains, in ordinary negligence language, that the person must exercise the care that a person of ordinary prudence would exercise in the same situation. That language does not direct a different standard of care than ordinary negligence. The instruction further directs that the emergency must not be created by the fault of the person claiming the emergency. The trial court also instructed the jury on a person's responsibility for injuries caused by ordinary negligence, the ordinary negligence standard of exercising the degree of care that persons of common sense and ordinary prudence would exercise under the same or similar circumstances, the specific requirement of exercising ordinary care under the surrounding circumstances in the operation of a motor vehicle, and the requirement for complying with traffic control devices.

■■■ Although this sudden emergency instruction restates the ordinary negligence standard of care for an emergency situation and may be argumentative, we do not believe that, when read as a whole and with the court's other instructions, it unduly emphasized a standard of care different than the ordinary negligence standard of care. *Cf. Spieker v. Westgo, Inc.,* 479 N.W.2d 837, 845 (N.D.1992) [in defective design case, argumentative instructions on manufacturer's duty, when considered as a whole with other instructions, did not give undue emphasis to duties not imposed by law]. The court's instructions allowed the Ebachs to present evidence and argue that Ralston failed to exercise ordinary care in operating his truck both before and during the alleged emergency. Those instructions do not require a different standard of care than ordinary negligence and are consistent with the assessment of fault under comparative negligence. We

believe the jury instructions, as a whole, correctly and adequately advised the jury on Ralston's duty to exercise ordinary care under the circumstances.

██ The Ebachs alternatively assert that a sudden emergency instruction should not have been given in this case because Ralston's lack of care caused the sudden emergency. When there is conflicting evidence about whether a person's conduct caused the emergency situation, we have held that an emergency instruction is justified. *Gronneberg v. Hoffart.* Here, there was conflicting evidence about whether Ralston's negligence caused the sudden emergency. There was also conflicting evidence about whether Ralston's conduct during the emergency was negligent. *Compare Haider v. Finken* [sudden emergency instruction not warranted where no issue raised that actor was negligent after discovering the emergency]. Under these circumstances, the trial court did not err in giving this sudden emergency instruction.

### B. Violation of Statutory Duty

██ The Ebachs assert that the trial court erred in not instructing the jury that running a red light was negligence per se. The trial court's instruction that the violation of a statutory duty may be evidence of negligence is consistent with our well-established case law that the violation of a statutory duty is evidence of negligence and not negligence per se. *Gronneberg; Haider.* The trial court's instruction correctly and adequately advised the jury of the law.

### 3. Sufficiency of the Evidence

The Ebachs argue that the trial court erred in denying their motion for a new trial because the jury verdict was not supported by the evidence. They contend that, because of evidence of changing weather conditions at the time of the accident, Ralston should have anticipated the slippery road and operated his truck in a manner that would have allowed him to stop at the red light. They assert that the jury's determination that Ralston was free of *all* negligence was a miscarriage of justice and requires a new trial.

██ On a motion for a new trial, a trial court has some discretion in viewing the evidence and may, within limits, weigh the evidence and judge the credibility of the witnesses. *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982). A motion for a new trial is addressed to the sound discretion of the trial court. *Id.* The trial court's exercise of discretion in ruling on a motion for a new trial is distinguishable from our power on review, which is limited to whether the trial court abused its discretion. *Id.* A trial court abuses its discretion when it acts in an arbitrary, capricious, or unreasonable manner. *Id.*

██ Here, there was evidence for the jury to find that Ralston unexpectedly encountered a slippery road immediately before the red light and that the Ebachs failed to prove that he was negligent in operating his truck both before and while he encountered that slippery condition. Ralston testified that he was an experienced truck driver and had driven his truck from Montana to Minot on the morning of the accident without encountering slippery roads. According to Ralston, he was driving under the speed limit in good winter driving conditions when he unexpectedly encountered the slippery spot while stopping at the red light. Other witnesses also testified that they had not encountered slippery roads in Minot that morning. There was also evidence that, when Ralston unexpectedly encountered the slippery spot, he flashed his headlights to warn other motorists, and that, in attempting to stop, he applied his brakes intermittently to avoid jackknifing the truck. Although Ralston did not honk his horn when he hit the slippery spot, he testified that the horn was physically located so that he could not safely reach it while using both hands to steer and downshift to avoid jackknifing the truck. The jury could have weighed that conflicting evidence and found that the Ebachs did not prove that Ralston failed to exercise ordinary care both before and when he unexpectedly encountered the slippery road.

In denying the Ebachs' motion for a new trial, the trial court determined that although there was evidence from which the jury could have found that Ralston was negligent, there

was also credible evidence that supported the jury's determination that Ralston was not negligent in operating his truck. The trial court was in a better position to exercise its discretion in assessing that conflicting evidence and in denying the Ebachs' motion for a new trial. We cannot say that the trial court acted arbitrarily, capriciously, or unreasonably in denying the Ebachs' motion. The trial court therefore did not abuse its discretion.

The order denying the Ebachs' motions for judgment notwithstanding the verdict and for a new trial is affirmed.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.