Filed 8/25/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 166

Ginger Harfield and 

Todd Harfield, Plaintiffs and Appellants

v.

Jeremy Tate, Defendant and Appellee

No. 980345

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Cynthia A. Rothe-Seeger, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Maring, Justice.

Alan C. Erickson, 803 Black Building, P.O. Box 1447, Fargo, N.D. 58107, for plaintiffs and appellants.

Ronald J. Knoll, Jeffries, Olson, Flom & Bullis, P.A., P.O. Box 9, Moorhead, MN 56561-0009, for defendant and appellee.

Harfield, et al. v. Tate

No. 980345

Maring, Justice.

[¶1] Todd and 
Ginger Harfield appeal from a judgment entered upon a jury verdict dismissing their negligence action against Jeremy Tate.  We hold the trial court erred when it issued a jury instruction unsupported by the evidence and denied the Harfields’ motion for judgment as a matter of law.  We reverse and remand to the trial court for further proceedings consistent with this opinion.  

I 

[¶2] On December 28, 1994, Tate rear-ended the Harfields’ car as he ascended the 19
th
 Avenue exit ramp on Interstate 29 in Fargo.  A line of approximately four cars was stopped at the stop sign at the top of the exit ramp.  The Harfields’ car was directly in front of Tate’s pick-up truck as Tate came to an initial stop.  The vehicles were approximately 10 to 20 feet apart.  At some point while the traffic was progressing, Tate heard a noise coming from the back of his truck which caused him to turn around and look into the back of the truck.  The noise came from empty water jugs rolling around in the back of his truck.  Tate had placed the jugs there that morning.  When he looked ahead he was able to apply his brakes but unable to avoid a collision with the Harfield car, which in turn collided with the vehicle in front of it.  According to body shop estimates, the car’s rear-end and frame were damaged, resulting in nearly $2,000 of damage.  

[¶3] The Harfields sued Tate for negligence.  Ginger Harfield claims to have suffered a soft tissue injury and incurred medical expenses of nearly $13,000.

[¶4] The relevant disputed facts at trial involved the speed of Tate’s truck at impact and the extent of damage to the Harfield car.  Harfields’ expert, Mariusz Ziejewski, Ph.D., opined the speed at impact was in excess of 7 ½ m.p.h.  His opinion was based primarily on the structural damage to the vehicle’s frame and rear quarter panels.  The defense’s accident reconstructionist, Myron Lofgren, testified the speed at impact was 5 m.p.h.  Lofgren based his opinion on the lack of compression to the rear bumper’s shock absorbers on the Harfield vehicle.  Lofgren claimed any frame damage to the Harfield vehicle could not have resulted from this accident because a frame cannot be bent without significant damage to the bumper’s shock absorbers.

[¶5] At the end of trial, the Harfields moved for judgment as a matter of law under N.D.R.Civ.P. 50(a) that Tate was negligent and that his negligence was the proximate cause of Ginger Harfield’s injuries.  The court denied the motion.  Over the Harfields’ objection, the trial court submitted to the jury the following instruction:

Distracting Circumstances—In determining whether the Defendant exercised due care in the operation of the Chevy truck, you may consider whether distracting circumstances existed and whether, under the circumstances, the distracting circumstances excuse the Defendant’s failure to see what is in plain sight.

The jury found Tate not negligent in the operation of his motor vehicle and judgment was entered dismissing with prejudice Harfields’ complaint.  The Harfields timely appealed, arguing the trial court erred when it denied their motion for judgment as a matter of law and gave the jury the “distracting circumstances” instruction.

II

[¶6] We turn first to the issue of the jury instruction.  In 
Dale v. Cronquist
, 493 N.W.2d 667, 670 (N.D. 1992) (citations and  quotations omitted) we summarized our standard of review for jury instructions:

Jury instructions should fairly inform the jury of the law applicable to the case.  They should also fairly cover the claims made by both sides of the case.  Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.

. . . .

When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it.  The trial process is still more art than science.  Only scant evidence may be needed to support a jury instruction.  Where there is no evidence to support a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper.

[¶7] The theory of “distracting circumstances” is most commonly associated with premise liability cases.  In that context, the doctrine excuses a plaintiff’s inattentiveness to open and obvious dangers on a business premises he otherwise would be duty-bound to be aware of in the absence of sufficient “distracting circumstances.”  Distracting circumstances excusing a plaintiff’s inattentiveness to obvious dangers often include store displays intended to attract the customer’s attention.  
See, e.g.
, 
Schuller v. Hy-Vee Food Stores, Inc.
, 328 N.W.2d 328, 332-33 (Iowa 1982) (trial court erred by not giving “distracting circumstances” instruction where plaintiff tripped over obstruction in plain sight while looking at store displays); 
Van Gordon v. Herzog
, 410 N.W.2d 405, 406-07 (Minn. Ct. App. 1987) (summary judgment reversed because a jury could find the noisy, crowded circumstances of a bar excused patron’s inattentiveness when he fell through obviously opened window in plain sight).

[¶8] The doctrine was eventually adopted by some courts in automobile negligence cases to lessen the harsh effects of contributory negligence on plaintiff victims.  This Court applied the doctrine several times in automobile negligence cases prior to our State’s adoption of comparative negligence.  In all of these cases, the plaintiff driver claimed the existence of “distracting circumstances,” in order to avoid contributory negligence.  
See, e.g.
, 
Wisnewski v. Oster
, 110 N.W.2d 283, 287-88 (N.D. 1961) (plaintiff was contributorily negligent because sufficient “distracting circumstances” did not exist); 
Anderson v. Schreiner
, 94 N.W.2d 294, 298 (N.D. 1958) (“there were no other cars in the vicinity nor any other circumstances, distractin[g] in their nature, which might have excusably diverted [plaintiff’s] attention . . . [thus] plaintiff was negligent as a matter of law”); 
Billingsley v. McCormick Transfer Co.
, 228 N.W. 424, 427 (N.D. 1929) (“dusty roads, passing vehicles, distracting circumstances, sudden emergencies, are all nonexistent” thus plaintiff was contributorily negligent).
(footnote: 1)

A

[¶9] 
The Harfields first argue because 
the doctrine of “distracting circumstances” is a former contributory negligence concept it is no longer viable in a comparative fault jurisdiction.  We disagree.

[¶10] Much like the “distracting circumstances” doctrine, the doctrine of “momentary forgetfulness” lessened the harsh effects of contributory negligence by excusing a plaintiff’s negligence when he momentarily forgot known dangers to which he had voluntarily exposed himself.  
E.g.
, 
Pyke v. City of Jamestown
, 15 N.D. 157, 169-70, 107 N.W. 359, 363 (1906).  In 
Keller v. Vermeer Mfg. Co.
, 360 N.W.2d 502, 505-06 (N.D. 1984) and again in 
Erickson v. Schwan
, 453 N.W.2d 765, 767-68 (N.D. 1990), we held the doctrine of “momentary forgetfulness,” although a doctrine originating under the principles of contributory negligence, remained a relevant consideration in the comparative negligence context.  In 
Keller
, 360 N.W.2d at 506, we reasoned under comparative negligence principles a plaintiff’s momentary forgetfulness of a known danger remains a relevant factor “the trier of fact may consider in connection with all of the other circumstances involved in determining whether or not the plaintiff and the defendant were exercising reasonable care under the circumstances, and, if not, in apportioning the negligence of the parties in allowing damages.”

[¶11] We have also retained under our comparative negligence system another analogous theory to the “distracting circumstances” doctrine—the “sudden emergency” doctrine.  Under this doctrine, a tortfeasor’s negligence is excused or mitigated when confronted with circumstances constituting a sudden danger or emergency.  
E.g.
, 
Haider v. Finken
, 239 N.W.2d 508, 514 (N.D. 1976).  We have acknowledged the criticism of the use of “sudden emergency” instructions under comparative negligence systems, but have concluded

carefully drafted instructions about a driver's standard of ordinary care under the circumstances of an emergency, coupled with instructions about the driver's standard of ordinary care before the emergency arose, give adequate guidance to the jury and latitude to the parties to argue that a sudden emergency may have been caused by the driver's lack of prior care and should have been anticipated.  Carefully drafted instructions about those situations direct a jury to assess fault for deviations from the negligence standard of ordinary care under emergency circumstances and are consistent with the assessment of fault under comparative negligence.

Ebach v. Ralston
, 510 N.W.2d 604, 610 (N.D. 1994).

[¶12] While we recognize our adoption of comparative negligence has shifted the focus from “traditional, doctrinal labels to the singular, inclusive concept of ‘fault,’” 
Erickson
, 453 N.W.2d at 768, we nevertheless conclude the adoption of comparative fault has not rendered a “distracting circumstances” instruction necessarily error.  Therefore, if there is sufficient evidence to support such an instruction, the doctrine of “distracting circumstances” remains a relevant consideration under comparative fault principles to be considered with all of the circumstances in determining whether either party to a negligence action was exercising reasonable care and in apportioning the fault of the parties.  We note, however, some of the same concerns we recognized in 
Ebach
 with the use of a separate sudden emergency instruction are presented with the use of a separate instruction on distracting circumstances and caution that an instruction that unduly emphasizes distracting circumstances is not acceptable.  510 N.W.2d at 610.

B 

[¶13] The Harfields argue even if a “distracting circumstances” instruction is appropriate under comparative fault, Tate should not be able to invoke the defense under the facts of this case.  We agree.

[¶14] Previous decisions of this Court have applied the negligence doctrines of “sudden emergency” and “distracting circumstances” in the same case.  
See
 
Bauer v. Kruger
, 114 N.W.2d 553, 557 (N.D. 1962) (“[distracting] circumstances may be present when the driver is compelled to act in an emergency which he did not create and which he could not reasonably foresee”);  
Wisnewski
, 110 N.W.2d at 288 (“where there [a]re distracting circumstances or sudden emergencies we have held that the question of contributory negligence was for the jury”).  In 
Lostegaard v. Bauer
, 51 N.W.2d 761 (N.D. 1952), a case involving a plaintiff who rear-ended the defendant’s truck parked on a highway, we held there was sufficient evidence to excuse the plaintiff’s contributory negligence because sufficient distracting circumstances existed, and the plaintiff was confronted with “sudden emergency.”  
Id.
 at 766.  Clearly, both doctrines are premised on the notion that, when sufficient supporting evidence exists, certain circumstances may excuse or mitigate a party’s negligence.

[¶15] Both doctrines are also premised on the notion a tortfeasor’s negligence cannot be excused or mitigated by distracting circumstances or sudden dangers of his own making.  In 
Ebach
, 510 N.W.2d at 609, we explained the “sudden emergency” doctrine is premised on the principle that a person suddenly confronted by a dangerous situation, “whether it was created by the negligence of another person or by a condition not the result of his own negligence, is not held to the same accuracy of judgment as would be required of him if he had time for deliberation.”  
See also
 Lee & Lindahl, 
Modern Tort Law
, § 10.15 (rev. ed. 1988) (the emergency “must have been real, or at least there must have been circumstances such as would lead a reasonable person to believe imminent danger existed . . . [and] must not have been created by the plaintiff, but must have been caused by the defendant or some third party”).  The decisions of this Court involving the doctrine of “distracting circumstances” have similarly implied distracting circumstances of the plaintiff’s own making do not excuse or mitigate his contributory negligence.  
E.g.
, 
Lostegaard
, 51 N.W.2d at 766; 
Billingsley
, 228 N.W. at 427.

[¶16] The “distracting circumstances” doctrine does not lower or minimize one’s expected standard of care.  Under such circumstances the person invoking the doctrine is required to exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances.  
See
 
Ebach
, 510 N.W.2d at 609-10 (discussing the argument that the emergency doctrine suggests a lower standard of care).  A person invoking the doctrine is not exonerated merely because of the presence of distracting circumstances.  As we have stated with regard to the sudden emergency doctrine, “[t]he doctrine is simply a principle of law to be utilized in determining the issue of negligence where the actor is suddenly confronted with [distracting circumstances] not of his own making or fault.”  
Gronneberg v. Hoffart
, 466 N.W.2d 809, 812 (N.D. 1991) (quoting 
Farmers Union Grain Terminal Ass’n v. Briese
, 192 N.W.2d 170, 179 (N.D. 1971) (referring to the “sudden emergency” doctrine)).

C  

[¶17] We now consider whether the “distracting circumstances” instruction was sufficiently supported by the evidence presented in this case.

[¶18] At trial, Tate claimed the cause of the distraction was “something rolling around in the back of the pick-up, making noise.”  He testified the noise came from empty water jugs rolling around in the back of his truck.  Tate had loaded the jugs into the truck that morning so he could get them filled in Fargo that afternoon.  The empty jugs remained in Tate’s truck all day, and because he forgot to get them filled, they were still rolling around in his pickup as he exited Interstate 29 in the early evening on the night of the accident.  

[¶19] In a case factually similar to this one, the Minnesota Supreme Court held sufficient distracting circumstances did not exist to excuse a driver’s negligence.  
Souden v. Johnson
, 125 N.W.2d 742, 743 (Minn. 1963).  In that case, two vehicles were stopped six feet apart when one child in the defendant’s vehicle commented on the appearance of another child in the rear seat.  As the defendant turned around to check on the child, she released the brake and rear-ended the plaintiff’s vehicle.  Recognizing distracting circumstances may excuse otherwise negligent conduct, the court held such circumstances were not present because the condition of the child in the rear seat was not “sudden and critical.”  
Id.
  Thus, there was no reasonable risk of imminent danger to the child justifying the diversion of the defendant’s attention from the road.  
Id.

[¶20] Under these circumstances, we conclude the noise of the water jugs rolling around in the back of Tate’s truck is not a “sudden and critical” event justifying the diversion of his attention from the road and the distraction was of his own making.  Tate was not distracted because of the plaintiff’s or a third party’s actions and an instruction is only proper where there is evidence tending to show the claimed distraction was not caused or contributed to by the driver seeking to invoke the doctrine.  We, therefore, hold the trial court erred in instructing the jury on the doctrine of distracting circumstances.

III

[¶21] Having determined the court erred in giving the “distracting circumstances” instruction, we conclude there is no justification for Tate’s diversion of attention from the road in front of him.  The undisputed facts are such that no reasonable person could reach any conclusion but that in the exercise of due care, Tate should have seen the Harfield car and brought his vehicle under control to avoid the collision.  “Negligence and proximate cause are fact questions unless the evidence is such that reasonable minds can draw but one conclusion.”  
Larson v. Kubisiak
, 1997 ND 22, ¶ 7, 558 N.W.2d 852.  

[¶22] The trial court may grant a motion for judgment as a matter of law against a litigant if there is no legally sufficient evidentiary basis for a reasonable jury to find for that party.  N.D.R.Civ.P. 50(a)(1).  We review a trial court’s decision on a Rule 50 motion for abuse of discretion.  
See
 
Diversified Financial Systems Inc. v. Binstock
, 1998 ND 61, ¶ 10, 575 N.W.2d 677.

[¶23] We conclude the trial court abused its discretion when it denied the Harfields’ motion for judgment as a matter of law, and therefore determine Tate was negligent as a matter of law.  We reverse the judgment and remand to the trial court for a new trial on the issue of damages.  

[¶24] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
While the “distracting circumstances” doctrine was most often applied to excuse a plaintiff’s contributory negligence, this Court has instructed it is also appropriate to the determination of a defendant’s negligence.  
See
 
Kelmis v. Cardinal Petroleum Co.
, 156 N.W.2d 710, 715-16 (N.D. 1968) (reversing summary judgment and finding defendant driver negligent as a matter of law because “[t]he record clearly establishe[d] that there were no distracting circumstances which might excusably have diverted [the defendant’s] attention”).