2000 ND 150

**Timothy KREIDT, Plaintiff and Appellee,**

v.

**BURLINGTON NORTHERN RAILROAD, n/k/a Burlington Northern Santa Fe, Defendant and Appellant,**

and

**Christine Koltes, Defendant.**

No. 990381.

Supreme Court of North Dakota.

July 26, 2000.

Timothy Q. Purdon, Dickson Law Office, Bismarck, for plaintiff and appellee.

James S. Hill (argued) and Rebecca S. Thiem (appearance), Zuger Kirmis & Smith, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Burlington Northern Santa Fe Railroad ("BNSF") appealed from an order denying its motion for a new trial. We affirm.

[¶ 2] Timothy Kreidt suffered injuries arising out of an accident involving 26 vehicles and nine separate collisions on February 10, 1995. The collisions occurred in the westbound lane of I–94, west of Mandan, near the Crown Butte Exit. According to trial testimony, weather conditions deteriorated as motorists traveled west of Mandan, resulting in almost zero visibility.

[¶ 3] Some vehicles, including the one carrying Mary and Robert Steffan, stopped along the shoulder of the highway due to the poor visibility. A car driven by Christine Koltes stopped in the driving lane of traffic next to some cars also stopped on the shoulder. Shortly after stopping, Koltes was "rear-ended." Soon after, Marvin Sutheimer, driving a BNSF truck in the driving lane, came upon a row of cars stopped on the shoulder and the row of cars now stopped in the driving lane. Sutheimer turned into the passing lane to avoid the cars in the driving lane. Sutheimer stopped in the passing lane next to Koltes.

[¶ 4] Several collisions ensued. At some point Kreidt approached the area where the three rows of cars were stopped. Kreidt's vehicle was hit from behind and he suffered serious physical injuries. Testimony at trial conflicted as to whether Kreidt rear-ended someone before or after he was rear-ended.

[¶ 5] Kreidt sued Koltes and BNSF, alleging their negligence in blocking the interstate proximately caused his injuries. A jury returned a verdict assigning 45 percent of the negligence to BNSF, 45 percent to Koltes and 10 percent to Kreidt.

I

[¶ 6] On appeal, BNSF challenges the jury instructions given by the trial court. Jury instructions must fairly and adequately inform the jury of the applicable law. *Huber v. Oliver Cty.*, 1999 ND 220, ¶ 10, 602 N.W.2d 710. Although a party is entitled to instructions which present that party's theory of the case, the trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of applicable law. *Olson v. Griggs Cty.*, 491 N.W.2d 725, 729 (N.D.1992). On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient. *Huber*, at ¶ 10.

A

[¶ 7] BNSF argues the district court erred in refusing to give a sudden emergency instruction. BNSF proposed the following instruction:

> When a person finds himself confronted with a sudden emergency, which was not brought about by his own negligence or want of care, such person has the legal right to do what appears to him at the time he should do, so long as he acts in a reasonably prudent manner as any other person would have done under like or similar circumstances, to avoid any injury, and if he does so act, he will not be deemed to have been negligent even though[ ] it might afterwards be apparent that some other course of action would have been safer.

With the adoption of comparative negligence, some courts have found the sudden emergency doctrine to be no longer useful

and even detrimental in negligence cases. In *Ebach v. Ralston,* 510 N.W.2d 604, 608 (N.D.1994), the Ebachs argued the district court erred in giving a sudden emergency instruction. We stated in *Ebach*

> the continued use of a separate sudden emergency instruction in negligence actions has been criticized in recent years, because the typical sudden emergency instruction may suggest a lower standard of care for a sudden emergency, thus confusing responsibility for accidents under comparative negligence principles, and because it adds little to ordinary negligence instructions.

*Id.* at 609.

[¶ 8] We noted some courts have explicitly held the sudden emergency instruction should never be given in negligence actions, while others have discouraged the use of a separate sudden emergency instruction in negligence actions. *Id.* Although "we share[d] some of the concerns of courts that have criticized the use of a separate sudden emergency instruction in negligence actions," we nevertheless concluded in *Ebach:*

> carefully drafted instructions about a driver's standard of ordinary care under the circumstances of an emergency, coupled with instructions about the driver's standard of ordinary care before the emergency arose, give adequate guidance to the jury and latitude to the parties to argue that a sudden emergency may have been caused by the driver's lack of prior care and should have been anticipated. Carefully drafted instructions about those situations direct a jury to assess fault for deviations from the negligence standard of ordinary care under emergency circumstances and are consistent with the assessment of fault under comparative negligence. *See Young v. Clark*[, 814 P.2d 364 (1991)]; *Compton v. Pletch*[, 561 N.E.2d 803 (Ind.App.1990)]. Although an instruction that unduly emphasizes the sudden emergency doctrine is not acceptable, we nevertheless decline to reverse this

verdict solely on the basis of the instructions given.

*Id.* at 610.

[¶ 9] The sudden emergency doctrine is not so much a doctrine as an illustration of how negligence law is applied in a specific situation. *See Erickson v. Schwan,* 453 N.W.2d 765, 768 (N.D.1990) (noting the focus for determining tort liability has shifted from traditional, doctrinal labels to the singular, inclusive concept of fault). While the sudden emergency instruction may be given in appropriate cases, it is not indispensable. Thus, refusal to give a sudden emergency instruction is not by itself enough to constitute error.

[¶ 10] The instructions given by the trial court allowed BNSF to argue its theory of the case, i.e., that Sutheimer did what was reasonable under the abnormal circumstances. The court's instruction on "ordinary negligence" included the following, "Negligence is a relative term. Whether a certain act or failure to act is negligence depends upon the facts and circumstances of each particular case." Counsel for BNSF stated in closing argument:

> And it came at a time when there was nothing out there. He [Sutheimer] was driving where he didn't even know where he was. When he sat on the witness stand this morning when I recalled him, that was the question I asked him about, do you know where you were? The answer is, "no."
>
> He knew he was near Crown Butte. He knew that there was a creek in that area, and when you put a 35,000–pound vehicle down into the median, you take your chances of killing yourself or hurting yourself. So he did the most reasonable thing that one could do with the disability that was thrust upon him by the circumstance. He brings that vehicle to a halt.
>
> . . . .
>
> Ladies and gentlemen, as I started my remarks, I said to you that, you

know, it's the weather. It's the weather. When you are disabled by virtue of this weather, you are allowed to make reasonable options in order to protect yourself in all aspects of this case.

The ordinary negligence instruction that this Court will give you will tell you that you must fit the duty into the circumstances that are faced.

It's a lot different if I'm standing in a courtroom. My duty is going to be a lot different from Mr. Purdon's. I can be pushing things over, but it's a lot different when you're out on the highway system. It's a lot different, you must focus it on those circumstances.

[¶ 11] The instructions given by the trial court allowed BNSF to argue its theory of the case and adequately informed the jury of the law.

### B

[¶ 12] BNSF also asserts the court erred in its instruction on stopping a vehicle on a roadway. The court instructed the jury:

Upon any highway outside a business or residence district, a person may not stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or leave the vehicle off the roadway. In any event, not less than twelve (12) feet of unobstructed width of the roadway opposite the vehicle at rest must be left for the free passage of other vehicles and a clear view of the stopped vehicle must be available for a distance of two hundred (200) feet in each direction upon the highway. *This rule does not apply to the driver of a vehicle that is disabled in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle on the roadway.* If you find a party violated this rule, you should consider the violation together with all other facts in the case to determine if the party's conduct contributed proximately to the accident.

(emphasis added). The highlighted portion above is taken nearly verbatim from statute. *See* N.D.C.C. § 39–10–47 (stating "This section and sections 39–10–49 and 39–10–50 do not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position").

[¶ 13] BNSF objected to the instruction because it did not take into account the visibility problems on the day of the accident and requested the court add the following language to the stopping instruction.

A vehicle is disabled when it cannot be further moved from its position. It is immaterial whether the cause of such immobility is a mechanical malfunction or a lack of visibility such that further travel cannot be made with reasonable safety.

The requirement of two hundred (200) feet of clear view of the vehicle either direction does not apply when weather conditions render the same impossible.

[¶ 14] As we said above, a trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of applicable law. *Huber*, 1999 ND 220, ¶ 10, 602 N.W.2d 710. Relying on the given instruction, BNSF said in closing argument:

Mr. Purdon keeps telling us that you don't stop on the interstate highway. And I suggest to you, that you listen very carefully to what this Judge will tell you in the instructions, because that's not the case.

The rule does not apply to a driver of a vehicle that is disabled in such a manner and to such an extent that it's impossible to avoid stopping. Impossible. And I suggest to you that "disability" is a broad term. That when this man is driving a 35,000–pound vehicle down a

highway system and he tells you folks that he is blinded by what he sees, and that is supported by every single witness that's testified in this courtroom, that he is telling the truth.

And that he has no option.

[¶ 15] The instructions on the operation of a motor vehicle adequately informed the jury of the applicable law and allowed both sides to argue their theory of the case.

## C

[¶ 16] BNSF also argues the court erred in refusing to give an instruction on intervening cause. BNSF requested the following instruction:

> If you find that defendant was negligent but that the plaintiff's injuries were caused by the act of a third person, defendant may be liable for such injuries, if you further find that a reasonably prudent person, situated as the defendant was prior to the happening of the incident, would have foreseen an act of the kind committed by the third person as a probable consequence of the defendant's negligence. If your finding is that a reasonably prudent person would not have foreseen an act of the kind committed by the third person as a probable consequence of defendant's negligence, then defendant is not responsible for the plaintiff's injuries and your verdict should be for the defendant.

BNSF insists the above instruction was necessary to demonstrate BNSF was not responsible for the conduct of other drivers unless the evidence so established. However, the court instructed as follows, in regard to proximate cause:

> A proximate cause is a cause which, in natural and continuous sequence, produces the injury, and without which, the injury would not have occurred. It is a cause which had a substantial part in bringing about the injury either immediately or through events which follow one another.

> There may be more than one proximate cause of the injury. The fault of two or more persons may contribute to cause the injury, and in such case, each person's fault is regarded as a proximate cause.

[¶ 17] The proximate cause instruction made it clear negligence which does not "cause" an injury cannot be considered and there may be more than one proximate cause of an injury. The lack of an instruction on intervening cause did not unduly limit the arguments BNSF could make to the jury.

[¶ 18] We conclude the instructions as a whole adequately informed the jury of the law and allowed BNSF to present its theory of the case.

## II

[¶ 19] BNSF argues the district court abused its discretion in denying its motion for a new trial based on insufficiency of the evidence. In reviewing the motion for new trial, we examine the evidence in the light most favorable to the verdict to determine whether there is sufficient evidence to justify the verdict. *Barta v. Hinds*, 1998 ND 104, ¶ 5, 578 N.W.2d 553.

[¶ 20] BNSF asserts the jury's finding of proximate cause between BNSF's conduct and Kreidt's injuries was not supported by the weight of the evidence. It says it is uncontroverted the BNSF truck was in the median at the time Kreidt came upon the stopped vehicles. Thus, the stopping of the truck could not have been the cause of the injuries to Kreidt. It is true the evidence suggests the BNSF truck was not in the passing lane at the time Kreidt came upon the scene. A semi-truck had struck the vehicles behind Sutheimer and subsequently thrust the BNSF truck 200 feet forward into the median.

[¶ 21] However, BNSF's argument overlooks the fact the semi-truck may not have been blocking the passing lane had the BNSF truck not originally blocked the lane. A jury could have reasonably found

the stopping of the BNSF truck caused the passing lane of traffic to be blocked thereafter.

[¶ 22] BNSF also asserts the jury's allocation of fault in the case was not supported by the evidence, arguing more fault should have been assigned to Kreidt and "others." BNSF points to the fact Officer Hoopman, a key witness, testified he thought it was Kreidt's car that caused a 70–foot skid mark. Thus, Kreidt should have been found to be more than 10 percent at fault. BNSF also argues the jury should have found those that rear-ended Kreidt to be at fault.

[¶ 23] As to Kreidt's speed, Hoopman also testified he did not believe Kreidt was going at an unsafe speed as he neared the accident scene. Furthermore, the evidence was sparse and contradictory as to what exactly happened with the vehicles behind Kreidt. It was reasonable for the jury to conclude the primary cause of the injuries to Kreidt was the concurrent negligence of Koltes and Sutheimer stopping and blocking both lanes of traffic. There is sufficient evidence to justify the verdict given.

### III

[¶ 24] BNSF argues the district court abused its discretion in allowing prejudgment interest on past and future non-economic damages. We do not today confront whether interest may be awarded on future damages because BNSF waived its objection to that issue by not allowing future damages to be separately itemized from past damages on the Special Verdict Form. See Olmstead v. First Interstate Bank, 449 N.W.2d 804, 807 (N.D.1989) (holding failure to object to the form of the verdict prevents raising the issue on appeal). Nevertheless, BNSF argues the court should not have allowed prejudgment interest on all non-economic damages.

[¶ 25] While the issue of whether prejudgment interest should be awarded for non-economic damages is one for legiti-mate debate, our statute gives discretion to the trier-of-fact to award interest. It provides "In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury." N.D.C.C. § 32–03–05. The plain language of the statute, see N.D.C.C. § 1–02–02, endorses no distinction between economic and non-economic damages. It leaves the question of interest up to the discretion of the judge or jury.

[¶ 26] Some courts have decried the uncertain nature of non-economic damages. See, e.g., Greater Westchester Homeowners Ass'n. v. City of Los Angeles, 26 Cal.3d 86, 160 Cal.Rptr. 733, 603 P.2d 1329, 1338 (1979). However, one thing certain about all past damages is the victim is denied recovery until judgment. The jury awarded Kreidt economic and non-economic damages, and furthermore specified six percent interest should be paid on those damages. Under the circumstances of this case, and in light of the discretion given the trier-of-fact under our statute to award interest, we decline to set aside the jury's decision.

[¶ 27] We affirm.

[¶ 28] CAROL RONNING KAPSNER, WILLIAM A. NEUMANN, JJ., and LAURIE A. FONTAINE, D.J., concur.

[¶ 29] LAURIE A. FONTAINE, D.J., sitting in place of MARING, J., disqualified.

SANDSTROM, Justice, concurring in part and dissenting in part.

[¶ 30] I agree with parts I and II of the majority opinion. For the reasons set forth in my dissent in Roise v. Kurtz, 1998 ND 228, ¶¶ 16–35, 587 N.W.2d 573, I dissent to part III.

[¶ 31] Dale V. Sandstrom