2009 ND 140

**Michele DeeAnn GRAGER, Plaintiff and Appellant**

**v.**

**Kevin SCHUDAR, individually and as an Employee of Barnes County, North Dakota, and Barnes County, a political subdivision of the State of North Dakota, Defendants and Appellees.**

No. 20080302.

Supreme Court of North Dakota.

July 21, 2009.

Rehearing Denied Aug. 27, 2009.

Michele DeeAnn Grager, Dwight, ND, pro se, plaintiff and appellant.

Randall J. Bakke (argued) and Shawn A. Grinolds (on brief), Smith Bakke Porsborg & Schweigert, Bismarck, ND, for defendant and appellee Kevin Schudar.

Howard D. Swanson, Letnes, Marshall, Swanson & Warcup, Ltd., Grand Forks, ND, for defendant and appellee Barnes County.

KAPSNER, Justice.

[¶ 1] Michele Grager appeals from a judgment and from an order denying her motion for a new trial in her action against Barnes County and Kevin Schudar, a jailer

at the Barnes County Jail, stemming from Schudar's sexual act with Grager while she was a prisoner at the Barnes County Jail. A jury found that Barnes County was not negligent in supervising Schudar and that Grager consented to Schudar's sexual act. Grager argues the district court erred in instructing the jury that consent was a complete defense to her tort and constitutional claims, the court failed to properly instruct the jury on scope of employment, the court erred in instructing the jury on judicial notice, and the court erred in several evidentiary rulings. We hold the court erred in instructing the jury that Grager's consent to or participation in Schudar's conduct was a complete defense to her claims for assault, battery, intentional infliction of emotional distress, and civil rights violations, and we reverse and remand for further proceedings.

I

[¶ 2] Grager sued Barnes County and Schudar, individually and as an employee of Barnes County, alleging that while Grager was incarcerated in the Barnes County Jail in November 2004, Schudar sexually assaulted her. As a result of the incident, Schudar pled guilty to sexual abuse of a ward under N.D.C.C. § 12.1–20–06, which proscribes a jailer's sexual act with a prisoner regardless of the prisoner's consent. In this civil action, Grager sued Schudar for assault, battery, intentional infliction of emotional distress, and a violation of her civil rights, and she also sued Barnes County for negligent supervision of Schudar and for a violation of her civil rights. A jury found that Barnes County was not at fault in supervising Schudar and that Grager consented to Schudar's conduct. A judgment was entered dismissing Grager's civil action, and the district court thereafter denied Grager's motion for a new trial.

II

[¶ 3] Grager's "motion for appeal to the supreme court" does not clearly state whether she is appealing from the judgment or from the order denying her motion for a new trial. We construe Grager's notice of appeal liberally and treat her appeal as an appeal from the judgment and from the order denying her motion for a new trial. *See Witzke v. Gonzales*, 2006 ND 213, ¶ 4, 722 N.W.2d 374. We review an appeal from an order denying a motion for a new trial under the abuse-of-discretion standard. *Okken v. Okken*, 325 N.W.2d 264, 269 (N.D.1982). A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *State v. $33,000.00 U.S. Currency*, 2008 ND 96, ¶ 6, 748 N.W.2d 420. " 'A trial court acts in an arbitrary, unreasonable, or unconscionable manner when its decision is not the product of a rational mental process by which the facts and law relied upon are stated and considered together for the purpose of achieving a reasoned and reasonable determination.' " *Id.* at ¶ 12 (quoting *Gepner v. Fujicolor Processing, Inc.*, 2001 ND 207, ¶ 13, 637 N.W.2d 681).

III

[¶ 4] Although Grager filed a "motion for order of transcript of proceedings" and there is a transcript of the hearing on Grager's motion for new trial, this record does not include a transcript of the trial or any other proceedings in the district court. An appellant assumes the consequences and the risks of failing to provide a complete transcript. *Lithun v. DuPaul*, 447 N.W.2d 297, 300 (N.D.1989). If the record on appeal does not provide for a meaningful and intelligent review of an alleged error, we will decline to review the issue. *Id.* To the extent Grager rais-

es issues about the admissibility of evidence or other issues that require a trial transcript for meaningful and intelligent review, her failure to provide a transcript precludes review of those issues. However, she also has raised issues about the propriety of jury instructions, which we can review on the record before us.

## IV

■ [¶ 5] Grager argues the district court erred in instructing the jury that consent was a complete defense to her tort and constitutional claims. She contends the Legislature has determined that consent is not a defense to the criminal charge of sexual abuse of a ward under N.D.C.C. § 12.1–20–06, and an inmate is not legally capable of consenting to sexual assault by a jailer. She asserts it is incongruous for Schudar to be strictly liable in a criminal prosecution for the sexual offense, but for consent to be a complete defense in a civil action.

■ [¶ 6] Jury instructions must fairly and adequately inform the jury of the applicable law. *Huber v. Oliver County*, 1999 ND 220, ¶ 10, 602 N.W.2d 710. Although a party is entitled to instructions that present the party's theory of the case, a district court is not required to instruct the jury in the exact language sought by a party if the court's instructions correctly and adequately inform the jury of the applicable law. *Olson v. Griggs County*, 491 N.W.2d 725, 729 (N.D.1992). On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient. *Kreidt v. Burlington N. R.R.*, 2000 ND 150, ¶ 6, 615 N.W.2d 153.

[¶ 7] The district court's instructions on consent provided a "complete defense" to Grager's claims for assault, battery, in-

tentional infliction of emotional distress, and civil rights violations if Grager "consent[ed] to or participate[d] in the conduct" of Schudar:

### CONSENT IS A DEFENSE

One who consents to or participates in the conduct of another cannot recover in an action for the conduct or for the harm resulting from it. Consent can be either express or implied. No one suffers a legal wrong as the result of an act to which one freely consents. One who consents to an act is not wronged by it under the law. The fact that someone was an inmate does not automatically render that person incapable of consenting to or participating in the conduct of another. Whether there is consent is a question of fact. Further, you may consider consent in your determination of damages, if any are awarded.

If you find Grager consented to the conduct of Schudar at the time of the incidents alleged in this matter, such consent is a complete defense to Grager's claims for assault, battery, intentional infliction of emotional distress, and civil rights violations.

### CONSENSUAL SEXUAL ACT

A consensual sexual act between an inmate and a correctional officer does not violate the prisoner's constitutional rights and no civil rights liability may be imposed.

■ [¶ 8] Generally, one who consents to conduct that would otherwise be an intentional tort cannot recover damages for that conduct. Daniel B. Dobbs, *The Law of Torts*, § 95 (2001); *see* Restatement (2nd) of Torts, § 892A (1979) ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the

conduct or for harm resulting from it."); N.D.C.C. § 31–11–05(6) ("One who consents to an act is not wronged by it."). Professor Dobbs explains the rationale about consent in the context of intentional torts:

One who consents or apparently consents to acts that would otherwise count as an intentional tort cannot recover damages for those acts. Among the trespassory and intentional torts, consent defeats the claim for battery, for false imprisonment, and for trespass to land or chattels or conversion. For example, a sexual touching would be a battery if it is not effectively consented to, but if the plaintiff effectively consents to the touching, there is no battery. Similarly, the plaintiff consents to a friendly wrestling match with the defendant, the plaintiff cannot recover for injuries sustained in that match. An analogous rule applies in some but not all negligence cases under the name of assumed risk.

The consent principle is general in its scope, firm in its acceptance, and central in its significance. It makes the plaintiff's right of self-determination or autonomy the centerpiece of the law on intentional torts and to some extent other torts as well. Nevertheless, a cluster of subsidiary rules and definitions both enlarge and constrain its application.

Dobbs, *The Law of Torts*, at § 95 (footnotes omitted).

[¶ 9] Professor Dobbs also explains that apparent consent is not a defense if it was obtained by duress, or by an abuse of power, and an abuse of power includes sexual demands by employers, or by others in special positions of power. Dobbs, *The Law of Torts*, at §§ 95, 101–02. *See also* Restatement (2nd) of Torts, §§ 892B (1979) (consent is not effective if given under duress) and 892C (1979) (consent

effective to bar recovery in tort action although conduct consented to is crime, but if conduct is made criminal in order to protect certain class of persons irrespective of their consent, consent of members of that class to conduct is not effective to bar tort action).

[¶ 10] Some courts have recognized that a prisoner's consent to sexual conduct with a prison official is a defense to a civil lawsuit for damages. *See Freitas v. Ault*, 109 F.3d 1335, 1338–39 (8th Cir.1997); *Robins v. Harris*, 769 N.E.2d 586, 587 (Ind.2002); *Pritchett v. Heil*, 756 N.E.2d 561, 566–67 (Ind.Ct.App.2001).

[¶ 11] In *Freitas*, 109 F.3d at 1338, the Eighth Circuit Court of Appeals said prisoners could state a cause of action for sexual harassment or abuse under 42 U.S.C. § 1983. The court said a corrections officer's sexual harassment or abuse of a prisoner can never serve a legitimate penological purpose and may result in unnecessary and wanton infliction of pain under the Eighth Amendment. *Id.* The court concluded, however, the trial court did not clearly err in finding the relationship between the corrections officer and the prisoner was "consensual in the freest sense of the word" and welcomed by the prisoner. *Id.* at 1338–39. The court of appeals held that "[w]ithout deciding at what point unwelcome sexual advances become serious enough to constitute 'pain,' ... at the very least, welcome and voluntary sexual interactions, no matter how inappropriate, cannot as a matter of law constitute 'pain'" under the Eighth Amendment. *Id.* at 1339.

[¶ 12] In *Robins*, the Indiana Court of Appeals reversed a trial court's summary judgment dismissing an inmate's civil sexual assault claims against a county and against law enforcement officers, concluding the inmate could not consent to the sexual assault under applicable criminal

law and the inmate's consent also was not a defense to a civil action. 740 N.E.2d 914, 918 (Ind.Ct.App.2000). Shortly after the consent issue was transferred to the Indiana Supreme Court, the case was settled and the defendants moved to dismiss the appeal. 769 N.E.2d at 587. The Indiana Supreme Court dismissed the appeal and summarily affirmed the decision of the court of appeals "except as to the availability of consent as a defense to the claim of battery." *Id.*

[¶ 13] In *Pritchett,* 756 N.E.2d at 564, a jury initially found a prisoner guilty of prostitution for committing sexual acts with a jailer in exchange for cigarettes. The Indiana Court of Appeals held the prisoner was collaterally estopped by the criminal conviction from claiming lack of consent in her subsequent civil action against the sheriff under theories for negligent hiring, supervision, and retention of the jailer, and for respondeat superior. *Id.* at 566–67.

[¶ 14] The foregoing authorities do not deal with the precise issue or statutes involved in the case, and they do not provide persuasive authority for deciding whether an adult prisoner's consent to or participation in sexual conduct with a jailer is a complete defense in a civil action for damages under North Dakota law.

[¶ 15] Section 12.1–20–06, N.D.C.C., criminalizes a jailer's sexual act with a prisoner regardless of whether the prisoner consents to the act:

> A person who engages in a sexual act with another person, or any person who causes another to engage in a sexual act is guilty of a class C felony if the other person is in official custody or detained in a hospital, prison, or other institution and the actor has supervisory or disciplinary authority over the other person.

For purposes of criminal liability, N.D.C.C. § 12.1–20–06 protects a class of persons regardless of their consent and reflects a policy of this state under our criminal laws to provide prisoners protection from sexual acts by persons who have supervisory or disciplinary authority over the prisoners regardless of the prisoners' consent. *See also* N.D.C.C. § 12.1–20–07(1)(d) (proscribing sexual contact with person in official custody or detained in prison if actor has supervisory or disciplinary authority over other person); N.D.C.C. § 25–03.3–01(9)(a)(6) (defining sexual predatory conduct as conduct involving sexual act or contact with victim in official custody in correctional facility and under supervisory authority, disciplinary control, or care of actor). The issue in this case is the impact of those statutes on tort liability.

[¶ 16] In 1987, the North Dakota Legislature enacted the modified comparative fault provisions of N.D.C.C. ch. 32–03.2, *see* 1987 N.D. Sess. Laws ch. 404, which significantly revised tort liability in North Dakota and shifted the focus from traditional tort doctrines to the singular inclusive concept of "fault." *See Rodenburg v. Fargo–Moorhead YMCA,* 2001 ND 139, ¶ 25, 632 N.W.2d 407. "As used in [N.D.C.C. ch. 32–03.2], 'fault' includes acts or omissions that are in any measure negligent or reckless towards the person or property of the actor or others, or that subject a person to tort liability or dram shop liability." N.D.C.C. § 32–03.2–01. The term fault "also includes strict liability for product defect, breach of warranty, negligence or assumption of risk, misuse of a product for which the defendant otherwise would be liable, and failure to exercise reasonable care to avoid an injury or to mitigate damages." *Id.; see also* N.D.C.C. § 32–03.2–02 ("fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, failure to avoid injury,

and product liability, including product liability involving negligence or strict liability or breach of warranty for product defect"). Under N.D.C.C. § 32–03.2–02, contributory fault does not bar recovery in an action by any person to recover damages for injury unless the fault was as great as the combined fault of all other persons who contribute to the injury. One of the underlying purposes of N.D.C.C. ch. 32–03.2 is to allocate fault for tortious conduct and to replace joint and several liability with several allocation of damages among those who commit torts in proportion to the fault of those who contributed to an injury. *Rodenburg*, at ¶ 25. Those statutory provisions for allocating comparative fault include voluntary conduct. *See* N.D.C.C. §§ 32–03.2–01 and 32–03.2–02.

[¶ 17] Statutory interpretation is a question of law, fully reviewable on appeal. *In re P.F.*, 2008 ND 37, ¶ 11, 744 N.W.2d 724. In construing statutes, our duty is to ascertain legislative intent. *E.g., Stutsman County v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985). The Legislature's intent must be sought initially from the language of the statutes. *Id.* Words in statutes must be given their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02. Statutory provisions must be considered as a whole with each provision harmonized, if possible, to give each word, phrase, clause, and sentence meaning and effect. N.D.C.C. § 1–02–07.

[¶ 18] Construing our comparative fault statutes in conjunction with our criminal statutes and N.D.C.C. § 31–11–05(6), we conclude an adult prisoner's apparent consent to or participation in sexual conduct with a jailer imposes neither absolute liability on the jailer nor a complete bar to the prisoner's recovery in a civil action premised upon the sexual conduct. When the statutory provisions for comparative fault are considered together with N.D.C.C. §§ 12.1–20–06, 12.1–20–07, 25–03.3–01(9)(a)(6) and 31–11–05(6), and the Restatement (2nd) of Torts § 892C, we believe those provisions preclude consent as a complete defense to a civil action for damages, but do not prevent a trier-of-fact from considering consent in allocating fault or determining the existence and extent of damages. We conclude that when consent to a sexual act by a person in official custody or detained in a treatment facility, prison, or other institution is at issue in a situation where the actor has supervisory authority, disciplinary control or care over the detained person, the jury must be instructed that it must consider all of the factors limiting the detained person's ability to control the situation or to give consent in deciding whether the detained person effectively consented to the sexual act. Each case must be decided on its own factual circumstances, including the age, sex, mental capacity, and relative positions of the parties.

[¶ 19] Here, the district court's instruction provided a complete defense if Grager consented to or participated in Schudar's conduct. We ordinarily consider jury instructions in light of the evidence presented at trial. *Sabot v. Fargo Women's Health Org.*, 500 N.W.2d 889, 891–93 (N.D.1993) (even if instructions may have been incomplete, failure to provide transcript on appeal precluded assessment of prejudicial effect, if any, instructions had on jury's deliberations). Here, there is no transcript of the evidence presented during this trial. However, the record reflects Schudar pled guilty to sexual abuse of a ward under N.D.C.C. § 12.1–20–06, which proscribes a jailer's sexual act with a prisoner regardless of the prisoner's consent. Because the sexual act was admitted, in this civil action, consent to the act was the central question the jury had to

decide. Unlike *Sabot,* where the instructions may have been incomplete and there was no way to determine whether the evidence supported the instruction as given, the instructions in this case and on this record were erroneous as a matter of law. We hold the district court's instruction that Grager's consent to or participation in Schudar's conduct was a complete defense is not a correct statement of the law. The instruction was incorrect because mere participation in the conduct does not automatically signify consent. The instructions were further inadequate. For purposes of finding consent in the context of an institutionalized person, the jury must be instructed to consider the factors previously discussed. We therefore conclude the court erred in instructing the jury that if Grager consented to or participated in Schudar's conduct, her consent or participation was a complete defense to her claims for assault, battery, intentional infliction of emotional distress, and civil rights violations.

[¶ 20] Moreover, the district court's instructions on fault, negligent supervision, and assumption of risk precluded recovery for a person who voluntary encounters the risk and were also too broad in the context of this factual situation and the parties' relative positions. We therefore conclude Grager is entitled to a new trial on her negligent supervision claim against Barnes County. We reverse the judgment, and we remand for further proceedings consistent with this opinion.

## V

[¶ 21] We also consider issues likely to arise on remand, *see City of Bismarck v. Mariner Constr., Inc.,* 2006 ND 108, ¶ 20, 714 N.W.2d 484, if there is an adequate record for review. *See Lithun,* 447 N.W.2d at 300.

## A

[¶ 22] Grager argues the district court failed to properly instruct the jury on scope of employment. She claims the court's instruction allowed the defendants to argue Schudar was not employed to sexually assault prisoners. Barnes County responds that the district court's instruction on scope of employment followed *Nelson v. Gillette,* 1997 ND 205, ¶ 13, 571 N.W.2d 332, and even if the instruction was erroneous, Grager was not prejudiced because the jury decided Barnes County was not at fault in the supervision of Schudar without addressing scope of employment.

[¶ 23] In *Nelson,* 1997 ND 205, ¶¶ 13, 20, 571 N.W.2d 332, we said scope of employment requires consideration of all the elements of Restatement (2nd) of Agency, § 228 (1958), which provides:

(1) Conduct of a servant is within the scope of employment if, but only if:

  (a) it is of the kind he is employed to perform;

  (b) it occurs substantially within the authorized time and space limits;

  (c) it is actuated, at least in part, by a purpose to serve the master, and

  (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[¶ 24] Here, the district court's instruction on scope of employment followed that language from *Nelson,* and we conclude the court's instruction on scope of employment correctly informed the jury of the applicable law and was not erroneous.

## B

[¶ 25] Grager argues the district court erred in instructing the jury on judicial notice of Attorney General's opinions. She claims the instruction erroneously implied that the Barnes County Sheriff and the Board of County Commissioners relied on the Attorney General's opinions as to the interpretation of the law when there was no testimony those officials relied on the opinions.

[¶ 26] The district court's instruction on judicial notice provided:

The Court has taken judicial notice, and you are hereby informed that:

1. That on the 9th day of May, 1983, then Attorney General Robert O. Wefald issued an Attorney General's Opinion to James T. Odegard, Grand Forks County States Attorney, in which Attorney General Wefald concluded "that the Board of County Commissioners has the authority to appoint someone other than the sheriff to the position of jail administrator. The sheriff would then be relieved of all responsibilities regarding the administration of the jail."

2. That on the 21st day of October, 2005, Attorney General Wayne Stenehjem expressly overturned the May 9, 1983 Attorney General Opinion and held that a county "cannot appoint someone other than the sheriff as . . . county jail administrator."

3. That issuance of an Attorney General's Opinion governs the actions of public officials until such time as the question presented is otherwise decided by the courts.

[¶ 27] To the extent Grager argues there was no testimony about the respective Barnes County officials' reliance on the Attorney General's opinions, her failure to provide a transcript precludes meaningful and intelligent review of this issue. Moreover, we also conclude Grager has failed to establish how she was prejudiced by the instruction, and she has not demonstrated the district court's analysis of this issue in denying her motion for new trial was an abuse of discretion.

## C

[¶ 28] Grager argues she was deprived a fair trial by several of the district court's evidentiary rulings. This record does not include a written order on the district court's rulings on the parties' motions in limine, and Grager's failure to provide a transcript precludes meaningful and intelligent review of the evidentiary issues in the context of the trial. Moreover, the district court's analyses of these issues in denying Grager's motion for a new trial provides reasoned analyses of the evidentiary issues, and on this record, we cannot say the court abused its discretion in denying her motion for a new trial on those issues.

## VI

[¶ 29] We reverse the judgment and the order denying the motion for a new trial, and we remand for further proceedings.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.