2010 ND 14

**Donald CARTIER and Kimberly Cartier, Plaintiffs and Appellants**

v.

**NORTHWESTERN ELECTRIC, INC., Defendant and Appellee.**

No. 20090045.

Supreme Court of North Dakota.

Jan. 25, 2010.

Rehearing Denied March 8, 2010.

David S. Maring, Bismarck, N.D., for plaintiffs and appellants.

Steven A. Storslee, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Donald and Kimberly Cartier appeal from a district court judgment dismissing their claims against Northwestern Electric and from an order denying their motion for a new trial. We conclude the district court did not abuse its discretion in giving two failure-to-mitigate instructions to the jury or in denying the motion for a new trial. We affirm.

I

[¶ 2] Donald Cartier was injured when he fell off a stepladder while examining duct work in the ceiling of his basement. He brought a personal injury claim against Northwestern Electric, and his wife, Kimberly Cartier, brought a loss of consortium claim. The Cartiers claimed that Donald Cartier fell after sustaining an electrical shock as the result of leaning against an incorrectly wired transformer. During the litigation, Northwestern Electric conceded it had incorrectly wired a transformer in the Cartiers' basement, which would have the result of giving a shock to someone who touched the transformer and some other metal object at the same time. Northwestern denied, however, that the error caused Donald Cartier's accident, or that any electrical shock was more than minimal. Northwestern contended that Donald Cartier was also negligent, that he assumed the risk of injury, and that he failed to exercise reasonable care to avoid injury, because he improperly used an unsafe ladder in the dark. Northwestern also contended Donald Cartier failed to exercise reasonable care to mitigate damages, arguing he overprotected his hip during the rehabilitation process.

[¶ 3] After a five-day trial, a jury found Donald Cartier and Northwestern each fif-

ty percent at fault. The district court therefore dismissed the Cartiers' case with prejudice and granted costs and disbursements of $32,565.31 to Northwestern. The Cartiers moved for a new trial, and the district court denied their motion. The Cartiers appeal, arguing the district court erred in giving two instructions to the jury: 1) an instruction defining "fault" as including a failure to exercise reasonable care to avoid an injury or to mitigate damages; and 2) an instruction titled "Duty to Avoid or Minimize Damages," which stated a person may not recover damages for any injury that could have been prevented by the exercise of ordinary care to avoid loss or minimize damages. The Cartiers contend the district court abused its discretion when it determined sufficient evidence existed to justify the two jury instructions.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

II

[¶ 5] On appeal, the Cartiers argue the district court abused its discretion by giving two jury instructions on the duty to avoid or minimize damages and, therefore, abused its discretion by denying the motion for a new trial.

A

[¶ 6] The Cartiers agree that the instructions correctly state the law.

[¶ 7] During the trial, the Cartiers objected to the two instructions because there was "no evidence" to support giving them.

[¶ 8] In support of their motion for a new trial, the Cartiers argued there was not "sufficient evidence" to support giving the two instructions. As the district court stated in its order denying the motion for new trial:

Because Cartier's objection to the jury instructions on "Fault" and "Duty to Avoid or Minimize Damages" at the time of trial was based on sufficiency of the evidence grounds, the Court will consider Cartier's motion for new trial on the basis of Rule 59(b)(6) only.

. . . .

Cartier argued that Northwestern did not introduce sufficient evidence that Cartier failed to mitigate damages, and, therefore, the Court erred when it allowed the phrase "or to mitigate damages" to be included in the jury instruction defining "Fault" and also by giving the instruction on plaintiff's "Duty to Avoid or Minimize Damages."

[¶ 9] On appeal, for the first time, the Cartiers argue there must be expert testimony to constitute "sufficient evidence" to support the giving of the two instructions. A touchstone for an effective appeal of an issue requires the issue to be properly raised in the district court so the court can intelligently rule on the issue. *State v. Osier*, 1999 ND 28, ¶ 14, 590 N.W.2d 205. When "a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court." *Andrews v. O'Hearn*, 387 N.W.2d 716, 728 (N.D.1986) (citation omitted). A requirement for expert testimony to justify giving the two instructions was not raised during the trial or in the motion for new trial.

### B

[¶ 10] A denial of a motion for new trial is reviewed under the abuse-of-discretion standard. *Grager v. Schudar*, 2009 ND 140, ¶ 3, 770 N.W.2d 692. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *Id.*

[¶ 11] The Cartiers argue the district court abused its discretion when it instructed the jury that the definition of "fault" included a failure to mitigate damages and when it allowed the jury to assess fault to Donald Cartier because of a failure to mitigate damages, because there was not sufficient evidence to support the instructions. This Court has summarized its standard of review for jury instructions as follows:

Jury instructions should fairly inform the jury of the law applicable to the case. They should also fairly cover the claims made by both sides of the case. Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.

. . . .

When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it. The trial process is still more art than science. Only scant evidence may be needed to support a jury instruction. Where there is no evidence to support a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper.

*Harfield v. Tate*, 1999 ND 166, ¶ 6, 598 N.W.2d 840 (quoting *Dale v. Cronquist*, 493 N.W.2d 667, 670 (N.D.1992) (citations omitted)).

[¶ 12] At trial, a clinical note from Dr. Yuanhui Zhang, who examined Donald Cartier about a year after his accident, was introduced into evidence. The note stated in part, "Almost 11 months after the [operation], the patient continues to experience significant left hip problems. This patient seemed to be overprotecting his left hip problem from the beginning." Additionally, Dr. Bruce Idelkope, a neurologist, performed an independent medical examination of Donald Cartier, and his videotaped deposition was presented at trial. Dr. Idelkope testified he found no neurologic reason to explain why Donald Cartier favored his left hip, and he wondered whether it was an overlearn or protective gait pattern Donald Cartier had developed.

[¶ 13] The district court, in its denial of the Cartiers' motion for new trial, found sufficient evidence existed to justify the jury instructions. The district court stated:

It was the Court's determination at the time of trial and it is the determination of the Court at this time that there was sufficient evidence to justify giving the "Fault" and "Duty to Avoid or Minimize Damages" instructions to the jury.

The Court recalls there was evidence presented by Dr. Kindy and Dr. Zhang that Cartier's unnatural gait could have been caused by the guarding [of] his hip during rehabilitation and that his continued use of a cane may have hampered his recovery. The Court also recalls it was Dr. Killen's opinion that Cartier's hip muscles were weak. There was also evidence given by physical therapist, Mike Rexin, that Cartier's hip muscles showed some weakness, which, Rexin believed, was caused by the guarding of his hip and incomplete rehabilitation of those muscles after the accident.

[¶ 14] The evidence presented at trial rose well above the level of "scant evidence" needed to support the jury instructions. Therefore, the district court did not abuse its discretion in denying the Cartiers' motion for new trial on the basis of the failure-to-mitigate instructions.

C

[¶ 15] The Cartiers contend Northwestern's burden of introducing "sufficient" evidence to support the jury instructions included producing evidence that Donald Cartier failed to mitigate damages and introducing expert testimony establishing a link between any failure to mitigate and resulting damages. The Cartiers rely on an Iowa Supreme Court case with similar facts, *Greenwood v. Mitchell,* 621 N.W.2d 200 (Iowa 2001). In that case, the Iowa court laid out a three-prong test to establish the proof necessary to support submission of a failure-to-mitigate claim: 1) there must be substantial evidence that there was something the plaintiff could do to mitigate his loss and that requiring the plaintiff to do so was reasonable under the circumstances; 2) it must be shown that the plaintiff acted unreasonably in failing to undertake the mitigating activity; and 3) there must be proof of a causal connection between the plaintiff's failure to mitigate and his damages, which in *Greenwood* required expert testimony. *Greenwood v. Mitchell,* 621 N.W.2d 200, 205–07 (Iowa 2001).

[¶ 16] At trial, however, the Cartiers did not object to the failure-to-mitigate instructions on the grounds that expert testimony was required to prove the causal link between any failure to mitigate and resulting damages. In *Andrews v. O'Hearn,* this Court rejected the plaintiff's objection to the district court's modification of a causation instruction on two independent procedural grounds: 1) plaintiffs

failed to object to the instruction, and 2) plaintiffs failed to raise the issue below upon moving for a new trial. *Andrews v. O'Hearn*, 387 N.W.2d 716, 727 (N.D.1986). Under North Dakota rules, a party who objects to an instruction "must do so on the record, stating distinctly the matter objected to and the grounds of the objection." N.D.R.Civ.P. 51(c)(1). Additionally, it is "well settled that where a motion for a new trial is made in the lower court the party making such a motion is limited on appeal to a review of the grounds presented to the trial court." *Andrews*, 387 N.W.2d at 727 (citing *Zimbelman v. Lah*, 61 N.D. 65, 67, 237 N.W. 207, 208 (1931)). "This restriction of appealable issues applies not only to review of a denial of the motion for a new trial, but also to the review of the appeal from the judgment itself...." *Id.* "[T]his rule forecloses appellate review of alleged errors in instructions which were not raised on the motion for new trial." *Id.* at 729.

[¶ 17] At trial before the district court, the Cartiers objected to the instructions solely on the basis that there was "no evidence" to support them. On the first objection, made relative to the "Definition of Fault" instruction, the Cartiers' attorney stated:

> And the reason is, there has been no proof, no evidence submitted, of any failure to exercise reasonable care to avoid an injury or to mitigate damages. And, indeed, what's been argued by the Defense is that my client has worked too hard to try to rehabilitate himself. So there is no evidence in this area. So it shouldn't be part of the instructions.

[¶ 18] He went on to state during the same discussion, "And there's been no evidence of failure to exercise reasonable care to mitigate damages. And for that reason, it shouldn't be in."

[¶ 19] Similarly, on the second objection, made relative to the "Duty to Avoid or Minimize Damages" instruction, the Cartiers' attorney stated, "I'd have the same objection I had before. I don't believe there's evidence on that topic."

[¶ 20] The third and final objection was made the next day, while the district court judge reviewed final jury instructions prior to closing arguments. The Cartiers' attorney reasserted his objection to the definition of fault instruction by stating, "I have an objection there." The district court responded, "Right. We've already dealt with that. I'm just saying—but now it reads, 'negligence, assumption of risk, or failure to exercise reasonable care to avoid injury or to mitigate damages.' Do you have a specific objection with this one, now, other than the one we made before?" The Cartiers' attorney stated, "Well, I just thought I had to object now, when we have our final instructions."

[¶ 21] The Cartiers also failed to raise the expert testimony issue in their motion for a new trial. Their memorandum of law in support of their motion for new trial argued the district court erred in instructing the jury with respect to the failure-to-mitigate instructions, because the "defendant failed to introduce sufficient evidence upon which the jury could come to the conclusion that Donald failed to mitigate damages or that fault could be assessed to him for the alleged failure." While the memorandum cited *Greenwood v. Mitchell*, the case was not cited for the proposition that expert testimony is required to prove a causal connection between a plaintiff's failure to mitigate and resulting damages. Instead, the *Greenwood* case was cited for the proposition, "Again, the lesson is clear, any fault that may be assessed for failure to mitigate in a post-accident setting cannot be used to defeat plaintiff's claim that the defendant

is liable for the accident and resulting damages not related to plaintiff's failure to mitigate." The memorandum did briefly refer to *Greenwood's* requirement of evidence that establishes a causal link between a failure to mitigate and resulting damages, but it made no mention of a requirement for expert testimony. Instead, it stated only, "The Court concluded that there was insufficient evidence in the record to support the concept that plaintiff's 'failure to continue his home exercise program was unreasonable' and 'insufficient evidence to establish a causal connection between [plaintiff's] failure to mitigate and his damages.'" The Cartiers argued only that sufficient evidence was necessary to establish the causal connection, not that expert testimony was required. Because the Cartiers failed to object on the ground that expert testimony was required, and failed to raise the issue in their memorandum of law in support of their motion for new trial, we are foreclosed from reviewing whether expert testimony was required.

[¶ 22] The Cartiers did not provide a transcript from the hearing on the motion for new trial, so we must assume they did not raise the requirement for an expert argument there either. *See Sabot v. Fargo Women's Health Org.*, 500 N.W.2d 889, 892 (N.D.1993) ("The appellant assumes the consequences and the risk for the failure to file a complete transcript.").

### D

[¶ 23] Finally, the record reflects no way of ascertaining what percentage of fault, if any, the jury assigned to Donald Cartier for a failure to mitigate damages. At trial, Northwestern argued Donald Cartier was negligent, he assumed the risk of injury, and he failed to exercise reasonable care to avoid his injuries, because he im-properly used an unsafe ladder in the dark. The district court used a jury verdict form requested by the Cartiers, which did not separate the different bases of fault. Thus, on appeal, it is unclear whether the jury assigned any fault to Donald Cartier for a failure to mitigate damages.

### III

[¶ 24] The district court did not abuse its discretion in giving the two failure-to-mitigate instructions to the jury and did not abuse its discretion in denying the motion for a new trial. The judgment dismissing the Cartiers' claims and the order denying their motion for a new trial are affirmed.

[¶ 25] CAROL RONNING KAPSNER, Acting C.J., DANIEL D. NARUM, D.J., WILLIAM F. HODNY, S.J., and DANIEL J. CROTHERS, J., concur.

[¶ 26] The Honorable DANIEL D. NARUM, D.J., and the Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of MARING, J., and VANDE WALLE, C.J., disqualified.