2015 ND 248

**Michelle TIDD, Plaintiff and Appellant**

v.

**Scott KROSHUS, Defendant and Appellee.**

**No. 20140426.**

Supreme Court of North Dakota.

Oct. 13, 2015.

Timothy M. O'Keeffe (argued) and Tatum O. Lindbo (appeared), Fargo, N.D., for plaintiff and appellant.

William P. Harrie (argued) and Sharon T. Lo (appeared), Fargo, N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Michelle Tidd appeals from a judgment entered on a jury verdict dismissing her negligence action against Scott Kroshus arising out of a collision between Tidd's bike and Kroshus' car. Tidd also appeals from the district court's order denying her motion for a new trial, arguing the district court erred in instructing the jury on the sudden emergency doctrine. We reverse and remand, concluding under the facts presented, it was error to instruct the jury on the sudden emergency doctrine.

I

[¶ 2] On the evening of August 18, 2010, Tidd was riding her bike on a sidewalk in Fargo when she collided with Kroshus' car. Kroshus was entering the street from the alley when he collided with Tidd. Tidd sued Kroshus alleging Kroshus'

negligence caused the collision and Tidd's bodily injuries.

[¶ 3] The parties' trial testimony differed on the details of the collision. Tidd testified the area was well-lit, she had lights on her bike, she was wearing a bright blue jacket with reflectors on it and Kroshus' car struck her bike. She testified she does not typically ride her bike at night because it is not safe to ride after dark. She testified she did not see Kroshus' car before the impact, and did not hear the car coming because she was wearing headphones while listening to her iPod.

[¶ 4] According to Kroshus, he was driving with his headlights on because the area was dark. He stopped his car in the alley as he was approaching the sidewalk. He stated the buildings on each side of the alley made it impossible to see anyone on the sidewalk. The collision occurred when he began looking to his left as he was "creeping forward to get a better look [at] the sidewalk." He did not see Tidd on her bike before the collision, and the bike had no lights. He immediately stopped his car after the collision. He testified he traveled the alley where the collision occurred a few times every week and he normally took precautions when emerging from the alley because he knew bike riders or pedestrians could be on the sidewalk. He does not usually see bike riders at night.

[¶ 5] Over Tidd's objection, the district court instructed the jury on sudden emergency. The "sudden emergency" instruction stated:

"If suddenly faced with a dangerous situation the person did not create, the person is not held to the same accuracy of judgment as one would be if there were time for deliberation. The person is not at fault if the person acted as an ordinary prudent person would act in a similar emergency."

In addition to the sudden emergency instruction, the jury was instructed on negligence, state law regarding the operation of a vehicle emerging from an alley, Fargo ordinances regarding the operation of bicycles on a sidewalk, operation of bicycles at night, evidence of compliance or non-compliance with statutes or municipal ordinances, the general care required in the operation of a motor vehicle, the duty of a person with the right-of-way, comparative fault and weight and credibility of evidence.

[¶ 6] Tidd argued the sudden emergency instruction was unnecessary because there was no evidence of a sudden emergency. The jury returned a verdict finding Kroshus was not at fault, and a judgment was entered dismissing Tidd's complaint. Tidd moved for a new trial, arguing the district court erred in instructing the jury on sudden emergency. Tidd's motion was denied.

## II

[¶ 7] Tidd argues the district court committed reversible error by instructing the jury on the sudden emergency doctrine. This Court has summarized its standard of review for jury instructions:

"Jury instructions should fairly inform the jury of the law applicable to the case. They should also fairly cover the claims made by both sides of the case. Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial.

. . . .

"When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it. . . . Only

scant evidence may be needed to support a jury instruction. Where there is no evidence to support a particular theory, there should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper." *Cartier v. Northwestern Elec., Inc.*, 2010 ND 14, ¶ 11, 777 N.W.2d 866 (quoting *Harfield v. Tate*, 1999 ND 166, ¶ 6, 598 N.W.2d 840). "On appeal, we review jury instructions as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient." *M.M. v. Fargo Pub. Sch. Dist. No. 1*, 2010 ND 102, ¶ 24, 783 N.W.2d 806 (quoting *Flatt v. Kantak*, 2004 ND 173, ¶ 23, 687 N.W.2d 208). If the district court commits error in its instructions, this Court decides whether the error was harmless. *Rittenour v. Gibson*, 2003 ND 14, ¶ 15, 656 N.W.2d 691.

▬▬ [¶ 8] In *Ebach v. Ralston*, this Court "outlined the contours of the sudden emergency doctrine" developed in earlier cases:

> " '2. The doctrine of "sudden emergency" is based upon the principle that a person suddenly confronted by a dangerous situation, whether it was created by the negligence of another person or by a condition not the result of his own negligence, is not held to the same accuracy of judgment as would be required of him if he had time for deliberation.
> " '3. Where a person who suddenly is confronted by a dangerous situation not caused by his own negligence exercises such care as an ordinarily prudent person would exercise in a like emergency, he is not liable for a resulting injury.' "

510 N.W.2d 604, 609 (N.D.1994) (quoting *Tennyson v. Bandle*, 181 N.W.2d 687 (N.D.1970), at syllabus paragraphs 2 and 3). The sudden emergency doctrine requires "a person to exercise ordinary care under emergency circumstances that are not caused by that person's own negligence." *Ebach*, at 609. "[W]hether a motorist was confronted with a sudden emergency [is a jury question] unless the evidence is such that reasonable men can draw but one conclusion therefrom." *Tennyson*, at 691.

[¶ 9] While discussing the sudden emergency doctrine in *Tennyson*, we also stated, "every unexpected occurrence does not constitute a sudden emergency. It must be a sudden emergency confronting [the actor] with such a condition that he momentarily is rendered incapable of deliberate and intelligent action." 181 N.W.2d at 691; *see also Ebach*, 510 N.W.2d at 610 ("As Prosser and Keeton on Torts at § 33 suggest, under present day traffic conditions, an automobile driver must be prepared for the sudden appearance of obstacles and persons on highways and at intersections." (citing W. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 33, 197 (5th ed.1984))).

[¶ 10] In allowing the sudden emergency instruction here, the district court stated:

> "Kroshus maintained he was unexpectedly confronted with an emergency he did not cause. Tidd wholly disagreed. That very dispute gave this Court reason to provide the sudden emergency instruction. The question of whether a sudden emergency was created is one for the jury to determine. *Tennyson v. Bandle*, 181 N.W.2d 687, 691 (N.D.1970). And where there is conflicting evidence about whether a person's conduct caused the emergency situation, the sudden emergency instruction is justified. *Ebach*, 510 N.W.2d at 610.
>
> "Based on Kroshus's case theory, he was entitled to the instruction. Kroshus testified it was dark out when the collision occurred. He said he was driving

west between three and five miles per hour in an alley just east of Seventh Street in Fargo. He testified he stopped his car before crossing the sidewalk parallel to Seventh Street. As he was 'creeping forward to get a better look at the sidewalk,' the collision with Tidd occurred. Kroshus said he did not see Tidd, her bicycle, nor any lights coming down the sidewalk prior to the collision. Without warning, Tidd's bicycle and Kroshus's vehicle collided. The impact occurred at the car's left front corner. Kroshus testified he 'stopped and put it in park as fast as [he] could.'"

[¶ 11] In the two cases cited by the district court, *Ebach* and *Tennyson*, this Court upheld the trial courts' decisions to instruct the jury on sudden emergency. In each case, the defendant motorist unexpectedly hit a slippery spot on the road before colliding with the plaintiff's vehicle. *Ebach*, 510 N.W.2d at 606; *Tennyson*, 181 N.W.2d at 689. We held in both cases sufficient evidence existed for the jury to find the defendants unexpectedly encountered a sudden emergency before the accident. *Ebach*, at 611 ("[T]here was evidence for the jury to find that Ralston unexpectedly encountered a slippery road immediately before the red light and that the Ebachs failed to prove that he was negligent in operating his truck both before and while he encountered that slippery condition."); *Tennyson*, at 691 ("Whether this sudden change in the condition of the street created a sudden emergency is something upon which reasonable men might well disagree.... We have examined the record and determine that there was evidence in this case upon which the court could properly submit the issue of sudden emergency to the jury....").

■ [¶ 12] The "sudden emergency" instruction in this case stated:

"If suddenly faced with a dangerous situation the person did not create, the person is not held to the same accuracy of judgment as one would be if there were time for deliberation. The person is not at fault if the person acted as an ordinary prudent person would act in a similar emergency."

Tidd argues there was no sudden emergency and the district court erred in giving the jury the sudden emergency instruction. We agree.

[¶ 13] According to Kroshus' testimony, the emergency was the accident itself. Kroshus testified he did not see Tidd until the collision. Unlike *Ebach* and *Tennyson*, no evidence shows Kroshus was confronted with a dangerous situation before the collision with Tidd. There was no external or intervening event, such as a sudden change in road conditions or an unexpected obstruction in the alley, causing Kroshus to make a split-second decision and subsequently collide with Tidd. Kroshus experienced nothing more than the ordinary risk of driving through an alley and encountering a pedestrian or bicyclist crossing the alley. It appears the collision resulted from one or more of the parties' allegations against the other—failure to yield, failure to keep a proper lookout or failure on the part of Kroshus or Tidd to watch out for the other—and not from an emergency independent of the parties' actions. We hold no evidence exists from which a reasonable person could conclude Kroshus was faced with a dangerous situation before the collision, and the district court erred in instructing the jury on sudden emergency.

[¶ 14] In a factually similar case, the Oregon Court of Appeals held there was no emergency when a bicyclist collided with a vehicle and the driver of the vehicle did not see the bicyclist before the collision. *Scott v. Iverson*, 120 Or.App. 538,

853 P.2d 302, 303–04 (1993). The court stated:

"In this case, everything that defendant advances to defend the emergency instruction is relevant to whether defendant was negligent and caused the injuries, but not to whether an emergency existed. The instruction could only have suggested to the jury, incorrectly, that there was a basis, independent of defendant's compliance with the reasonable person standard, for a finding that she was not negligent."

*Id.* at 304. The court also stated "[w]e doubt that an emergency charge should ever be given in an ordinary automobile accident case." *Id.* (quoting *Templeton v. Smith,* 88 Or.App. 266, 744 P.2d 1325, 1326 (1987)).

[¶ 15] The collision between Tidd and Kroshus was an ordinary traffic accident and the sudden emergency instruction should not have been given to the jury. Approving the instruction here would encourage its use in nearly every traffic accident case.

▬ [¶ 16] Having concluded the district court erred in giving the sudden emergency instruction, we must now decide whether the error was harmless. Rule 61, N.D. R.Civ.P., states our harmless-error standard in civil cases:

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

[¶ 17] Tidd argues the jury's application of the erroneous sudden emergency instruction to the facts presented could

have led to its finding that Kroshus was not at fault, and therefore, affected the outcome of the trial. It is unknown from the record whether the jury considered the sudden emergency instruction in finding Kroshus was not at fault. Because the instruction allowed the jury to apply a lesser standard of care to Kroshus' conduct, the instruction may have been a thumb on Kroshus' side of the judicial scale. We cannot conclude the error was harmless. Because the error may have affected the jury's view of liability and fault, the error affected a substantial right of Tidd's. We reverse and remand for a new trial.

[¶ 18] Having decided to reverse and remand for a new trial, the district court's order denying Tidd's motion for a new trial also is reversed.

### III

[¶ 19] The judgment is reversed, and the case is remanded for a new trial.

[¶ 20] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

McEVERS, Justice, dissenting.

[¶ 21] I respectfully dissent. I agree that the majority opinion has set forth the correct standard of review regarding jury instructions. I disagree that the district court abused its discretion by including the "sudden emergency" instruction.

[¶ 22] This Court has time and again cautioned on instructing on the "sudden emergency" doctrine. *See Kreidt v. Burlington Northern R.R.,* 2000 ND 150, ¶ 8, 615 N.W.2d 153 (discussing *Ebach v. Ralston,* 510 N.W.2d 604 (N.D.1994) (stating the continued use of the sudden emergency instruction has been criticized in negligence actions because it may suggest a

lower standard of care)); *Harfield v. Tate,* 1999 ND 166, ¶ 11, 598 N.W.2d 840 (acknowledging criticism of the use of "sudden emergency" instructions under comparative negligence). Perhaps, it is time to do away with the "sudden emergency" doctrine. But, until we do, the district courts must attempt to divine when it is appropriate to use it.

[¶ 23] The facts of this case are not so different from another seemingly "ordinary accident" case where the district court was reversed for not giving the "sudden emergency" instruction. *See Gronneberg v. Hoffart,* 466 N.W.2d 809 (N.D. 1991). In *Gronneberg,* a collision occurred in "rush hour" traffic resulting in a chain reaction of sudden stops and Gronneberg collided with the rear of Hoffart's vehicle. *Id.* at 810. Gronneberg testified that Hoffart's brake lights did not signal before the accident creating a "sudden emergency" because "he didn't have adequate warning of the stop." *Id.* Hoffart claimed that Gronneberg was following too closely and without proper lookout. *Id.* This Court stated, "[t]wo such different views of the evidence create an issue of fact. In a jury trial, it is the jury, not the court, that is the finder of fact and should determine which view of the evidence to accept." *Id.* at 813.

[¶ 24] While this case did not involve "rush hour" traffic, which is fairly ordinary these days, a factual dispute exists as to whether Tidd had lights on her bike and whether that contributed to the collision. Kroshus claimed he did not see Tidd on her bike before the collision, because the bike had no lights. Tidd alleged Kroshus' driving was negligent and the cause of the collision. I agree with the district court that based on two different views of the evidence the jury should decide which evidence to accept. *See Gronneberg,* at 813.

[¶ 25] Even if the majority is correct that the district court should not have given the instruction under these factual circumstances, the error was harmless. As the majority notes: " '[w]hether a motorist was confronted with a sudden emergency [is a jury question] unless the evidence is such that reasonable men can draw but one conclusion therefrom.' " *Majority,* at ¶ 8 (quoting *Tennyson v. Bandle,* 181 N.W.2d 687, 691 (N.D.1970)). There lies the rub. If reasonable men can draw but one conclusion, it was, at best, harmless error to give the instruction. The majority stated, "[w]e hold no evidence exists from which a reasonable person could conclude Kroshus was faced with a dangerous situation before the collision...." *Majority,* at ¶ 13. If that is the case, even if the jury considered the instruction, they would not have applied it to Tidd's detriment.

[¶ 26] Based on the standard of review, I would affirm. I would also have affirmed if the district court would have refused to give the instruction.

[¶ 27] LISA FAIR McEVERS